JOAN M. SKAJA AND OTHERS v. ANDREWS HOTEL
COMPANY.
BRADY'S BAR, INCORPORATED, THIRD-PARTY
DEFENDANT.

161 N. W. (2d) 657.

September 20, 1968—No. 40,841.

*Robb, Robb & Van Eps, M. W. Gaughan,* and *Douglas Dale Reid, Jr.,* for appellant.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Roderick D. Blanchard,* for respondent Brady's Bar, Inc.

ROGOSHESKE, JUSTICE.

This is an appeal from a summary judgment denying the right to recover either indemnity or contribution between vendors of intoxicating liquor in plaintiffs' action for damages authorized by our Civil Damage Act, Minn. St. 340.95.

For the purposes of determining the question presented, it is conceded that both the Andrews Hotel and Brady's Bar, licensed corporate liquor vendors, illegally sold intoxicating liquor to Katherine Majors, a minor, 20 years of age. These illegal sales contributed equally to proximately cause the intoxication of Katherine Majors, as a direct result of which she shot Russell Skaja, causing his death. Plaintiffs, Skaja's wife and five minor children, brought this action for damages for loss of support against both Brady's Bar and the Andrews Hotel under § 340.95.[1] Thereafter, Brady's Bar paid plaintiffs $20,000 in settlement and secured a covenant not to sue from them. Following a dismissal of the action against Brady's, defendant Andrews Hotel impleaded Brady's as a third-party defendant and in its complaint sought indemnity or contribution from Brady's.

---

[1] Minn. St. 340.95 provides: "Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof."

Brady's moved for judgment on the pleadings or in the alternative for summary judgment. The court granted summary judgment, and Andrews Hotel appeals from that part of the decision barring its right to seek contribution.[2]

For the purpose of this appeal we must, as did the trial court, assume as true (1) that both vendors sold intoxicating liquors to a minor and to her when she was "obviously intoxicated"[3] in violation of Minn. St. 1965, § 340.14, subd. 1, and Minn. St. 340.73, subd. 1; (2) that the illegal sales of each vendor proximately caused or contributed to the intoxication of the minor and plaintiffs' resulting injury and damage; and (3) that none of such illegal sales was in fact an intentional violation of the liquor laws, for the trial court noted that "the pleadings do not specify the circumstances" of the sales and if any sale were claimed to have been made with "actual knowledge" that the intoxicate was a minor, summary judgment could not be granted. Moreover, appellant, Andrews Hotel, removes the issue of the consequence of intentional illegal sales by conceding that "if it were found that one violation [by the party seeking contribution] was willful or intentional, contribution would be barred."

Under the factual situation and our prior decisions, it is therefore clear that both vendors are subject to common liability as concurrent but independent wrongdoers and plaintiffs may join both as defendants in a single action, Hartwig v. Loyal Order of Moose, 253 Minn. 347, 91 N. W. (2d) 794, 75 A. L. R. (2d) 459;[4] that each may be sued separately and held responsible for plaintiffs' entire damages even though the other vendor has contributed to cause such damages, Gronquist v. Olson, 242 Minn. 119, 64 N. W. (2d) 159; that neither may compel plaintiffs to make the other a party to the action or complain because the other has not been

---

[2] Since under the facts submitted Andrews Hotel and Brady's are each independently liable to plaintiffs for their entire damages, Andrews Hotel necessarily concedes that it has no right of indemnity against Brady's. Hendrickson v. Minn. Power and Light Co. 258 Minn. 368, 104 N. W. (2d) 843.

[3] See, Strand v. Village of Watson, 245 Minn. 414, 72 N. W. (2d) 609.

[4] See, Doyle v. St. Paul Union Depot Co. 134 Minn. 461, 159 N. W. 1081.

sued or because the action against the other has been dismissed;[5] that settlement by Brady's does not discharge Andrews even if plaintiffs' action had been separately instituted against each, Joyce v. Massachusetts Real Estate Co. 173 Minn. 310, 217 N. W. 337; and that an unsatisfied judgment against one would not prevent a later action against the other, Gronquist v. Olson, *supra*. In Andrews' claim for contribution, what is sought is to declare Brady's liable for any disproportionate share of their common liability which it may be compelled to pay as authorized by our procedural rules.[6] In determining the question of the right to contribution under the facts presented, the trial judge was aware, as are we, of the lack of any prior controlling decision in this or other states having similar Civil Damage Acts. Based upon our decisions with respect to the nature of the liability imposed by the act and contribution between joint tort-feasors, principally Farmers Ins. Exch. v. Village of Hewitt, 274 Minn. 246, 143 N. W. (2d) 230, he concluded that the mere making of illegal sales by two vendors causing intoxication and damage bars contribution between such illegal sellers. He reasoned that, since the act imposes strict liability without requiring proof of whether the illegal sale was intentionally or negligently made, "a seller of intoxicating liquor who serves a minor (whether or not the seller knows the age of the minor) or who serves an obviously intoxicated person (whether or not the seller subjectively believed that the person was intoxicated) is acting with a willful ignorance or disregard to the rights of others and is presumed to have known that he is doing an illegal act." Applying the rule denying contribution between joint tortfeasors "where the person seeking contribution was guilty of an intentional wrong, or, at least, where he must be presumed to have known that he was doing an illegal act," first declared in Ankeny v. Moffett, 37 Minn. 109, 33 N. W. 320, and most recently reiterated in the Farmers Insurance case, the trial court with defensible justification concluded that the right to seek contribution should not be allowed.

We cannot agree. It seems to us the effect would be to revert to the

---

[5] See, Strand v. Village of Watson, *supra*.

[6] Rule 14.01, Rules of Civil Procedure.

holding in Fidelity & Cas. Co. v. Christenson, 183 Minn. 182, 236 N. W. 618. In that case, based upon dicta embodying the principle that ignorance of the law excuses no one and thus a violator of a statute "must be presumed to have known that he was doing an unlawful act," (183 Minn. 186, 236 N. W. 619) it was held that a mere violation of a statute precluded recovery of contribution. In the Farmers Insurance case we rejected this reasoning, declaring that the Christenson holding "goes too far." 274 Minn. 256, 143 N. W. (2d) 237. We there held that merely establishing that a driver of an automobile was driving under the influence of intoxicating liquor without proof that such a violation of statute was an intentional wrong did not deprive the driver of his right to seek contribution from the illegal seller of the liquor. We took pains to point out that despite our approval of the Christenson holding in deciding Kemerer v. State Farm Mutual Auto. Ins. Co. 201 Minn. 239, 276 N. W. 228, 114 A. L. R. 173, the result in the latter case was consistent with the rule announced in Farmers Insurance and was not based upon the dicta of Ankeny because "applied out of context to every violation of a statute it is too broad." 274 Minn. 256, 143 N. W. (2d) 237. Our decisions may generally be said to stand for the proposition that as between malicious, willful, or intentional joint wrongdoers or tortfeasors who are in pari delicto, the right to seek contribution is barred. Stated positively, where there is common liability between parties for the same damages because of circumstances existing equally as to both, contribution is due as of right in equity because equity is equality of treatment, but the party who would thus be entitled to contribution forfeits such right if his common liability arose from an act which was willful or intentional in the sense that the evidence would support a finding that, despite his denial, he was conscious of doing a wrong or committing a violation of statute.

Applied to the facts of this case, the rule as it has developed in this state would allow Andrews Hotel to recover contribution from Brady's Bar since both are equally culpable and responsible for plaintiffs' damages and there is no claim of an intentional violation of the statutes governing the sale of intoxicating liquors. Practical considerations make it unreasonable to equate a mere violation of such statutes with conscious wrongdoing. Because of the danger of license revocation as well as ex-

posure to liability under the act, it is more likely that where illegal sales are made, especially to a minor deliberately falsifying his age, they have occurred in spite of the vendor's exercise of every reasonable precaution. Moreover, as in this case, the licensed vendor often does not make an illegal sale personally but is held liable on the basis of respondeat superior, a circumstance which was early recognized as an exception to the rule denying contribution among unintentional tortfeasors.[7] Consistent with our rule and the broad equitable principles upon which the doctrine of contribution is based, we find no valid reason to deny contribution in this case. To do so would be unfair and unjust, for it would permit one of two equally responsible wrongdoers to escape its aliquot share of a common burden. We limit our answer to the necessities of this case and hold only that a mere violation of the statutes governing the sale of intoxicating liquor does not preclude recovery of contribution, as proof of an illegal sale standing alone is not sufficient to support a reasonable inference that the violator committed an intentional wrong. What the result should be if both vendors were guilty of intentional violations or if the vendor seeking contribution alone intentionally violated, must be reserved for future decision.

More important, however, than attempting to classify the character of the statutory violation is determining the question on the basis of what result will best effectuate the policy objectives of the Civil Damage Act. Cf. Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254.[8] While the act does not expressly provide for an action between liquor vendors, permitting contribution will further its two principal purposes and promote this chapter's overall objective of controlling commercial liquor traffic. Primarily compensatory in purpose, the act provides a type of social insurance to compensate members of the public who are injured as a result of illegal liquor sales, and the burden of economic loss caused thereby is placed upon those who profit from furnishing liquor as a cost of engaging in that business. Village of Brooten v. Cudahy Packing Co. (8 Cir.) 291 F. (2d) 284.[9] Not unlike the liability imposed upon an owner

[7] Note, 37 Minn. L. Rev. 470.

[8] See, Note, 46 Minn. L. Rev. 169.

[9] See, also, Cruse v. Aden, 127 Ill. 231, 20 N. E. 73, 3 L. R. A. 327.

of a dog under Minn. St. 347.22 where injury may be inflicted without fault of the owner, the legislature as early as 1911 chose to protect the general public from the hazards of intoxication by holding the licensed liquor vendor strictly liable to an innocent third party injured by an illegal sale. This imposition of strict liability thus does not necessarily involve an element of moral culpability. Dahl v. Northwestern Nat. Bank, 265 Minn. 216, 121 N. W. (2d) 321, 94 A. L. R. (2d) 1134; Adamson v. Dougherty, 248 Minn. 535, 81 N. W. (2d) 110. The act merely represents a determination that, as between an innocent third party who has suffered loss caused by an illegal sale of liquor and the licensed vendor who made the sale, public policy requires that the vendor, with his ability to insure against the risk, bear the cost of the loss. Giving due weight to the remedial and regulatory objectives of the act, whenever one of several vendors is held liable by reason of an unintentional illegal sale, it is only just that he be afforded a remedy against the other vendors to compel them to bear their fair share of the common liability. There appears no valid reason to permit other vendors, whose illegal sales have combined to cause the loss, to escape liability while casting the burden solely upon one. To do so would unjustifiably emphasize the penal over the remedial and regulatory objectives of the act. Allowing contribution may not demonstrably advance the compensatory objectives of the act in favor of the injured party, but it will not hinder that objective and it will spread the burden of economic loss more equitably upon the liquor industry.

Secondly, the act by the imposition of the sanction of strict liability provides an extremely effective incentive for liquor vendors to do everything in their power to avoid making illegal sales. Murphy v. Hennen, 264 Minn. 457, 119 N. W. (2d) 489. The allowance of contribution between unintentional violators would serve to increase this incentive, for it will make more certain that every vendor who makes an illegal sale will be unable to escape liability for his share of the damages resulting because of "the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the wrongdoer" [10] as is possible if the right to seek contribution were denied.

---

[10] Prosser, Torts (3 ed.) § 47, p. 275.

Making the right of contribution available between unintentional violators will, therefore, distribute the burden of liability among those commonly liable equally, increase the incentive of all licensed vendors to guard against illegal sales, and spread more equitably the economic loss resulting from violations upon the liquor industry.

Reversed.