Gary T. SLAGER and Marcia L. Slager, as Co–Conservators and Co–Guardians of John E. Slager, Appellees,

v.

HWA CORPORATION, d/b/a College Street Club, Appellant.

No. 87–1696.

Supreme Court of Iowa.

Jan. 25, 1989.

John M. Bickel, James D. Hodges, Jr., and Diane Kutzko of Shuttleworth & Ingersoll, Cedar Rapids, for appellant.

Thomas Diehl of Leff, Leff, Leff, Haupert & Traw, Iowa City, for appellees.

LAVORATO, Justice.

The sole issue here is whether comparative fault under Iowa Code chapter 668 (1987) has any application as a defense to a dram shop action under Iowa Code section 123.92. The district court ruled it did not. We agree and affirm.

I. *Background Facts and Proceedings.*

The following facts, which gave rise to these proceedings, are gleaned from the petition. On August 3, 1986, the defendant, HWA Corporation, owned and operated the College St. Club, a liquor establishment in Iowa City. On that date Ramon Jose DeSantiago, a minor, was sold and served intoxicating beverages at the College St. Club while he was intoxicated or until he became intoxicated. DeSantiago left the club in an intoxicated condition and began tampering with a motorcycle belonging to John E. Slager. Slager confronted DeSantiago as DeSantiago was tampering with the motorcycle. At that point DeSantiago shot and seriously injured Slager.

Thereafter, Gary T. Slager and Marcia L. Slager, as co-conservators and co-guardians of John E. Slager, filed a dram shop action against HWA. In its answer, HWA denied the general allegations of the petition and alleged as an affirmative defense that the comparative fault of persons other than HWA had contributed to John's injuries.

The plaintiffs moved to strike the affirmative defense. They contended that, as a matter of law, the comparative fault defense is not available to a defendant in a dram shop action. Initially, the district court sustained the motion. Because HWA had filed a resistance to the plaintiffs' motion to strike and had requested a hearing, the court vacated its ruling. After the hearing, the court again sustained the motion to strike, holding that "[c]omparative fault does not apply in dram shop cases."

HWA filed an application for interlocutory appeal from this ruling, which we granted. It contends that dram shop liability falls within the definition of "fault" in Iowa Code section 668.1 and is therefore subject to the comparative fault provisions of Iowa Code chapter 668. The plaintiffs disagree, arguing that the legislature never intended such a result.

II. *Comparative Negligence and Comparative Fault.*

In 1983 we abandoned the doctrine that contributory negligence completely bars recovery. In its place, we adopted the doctrine of comparative negligence. Under our holding in *Goetzman v. Wichern,* 327 N.W.2d 742, 744 (Iowa 1982), an injured party's recovery was diminished in proportion to that party's negligence, and recovery was not barred unless the injured party's negligence was the sole proximate cause of the damages.

In response to *Goetzman,* our legislature in 1984 enacted Iowa Code chapter 668, entitled "Liability in Tort—Comparative Fault." The statute establishes a modified form of comparative negligence patterned largely after the Uniform Comparative Fault Act (Uniform Act). *See Speck v. Unit Handling Div.,* 366 N.W.2d 543, 545–46 (Iowa 1985). Rather than being limited to comparative negligence, however, "fault" under both includes

one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

Iowa Code § 668.1(1); *accord* Unif. Comparative Fault Act § 1(b), 12 U.L.A. 39 (Supp. 1988). In addition, under both chapter 668 and the Uniform Act, the legal requirements of causation in fact and proximate cause apply both to fault as the basis for liability and to contributory fault. *See* Iowa Code § 668.1(2); Unif. Comparative Fault Act § 1(b), 12 U.L.A. 39 (Supp.1988).

In two respects, chapter 668 and the Uniform Act differ substantially. The first difference relates to the effect of contributory fault on recovery. Under Iowa Code section 668.3(1), recovery is diminished in proportion to the amount of fault attributable to the claimant. Recovery, however, is barred if the claimant bears a greater percentage of fault than that attributed to defendants, third-party defendants, and released persons. In contrast, under the Uniform Act any contributory fault attributable to the claimant simply diminishes, but does not bar, recovery. *See* Unif. Comparative Fault Act § 1(a), 12 U.L.A. 38–39 (Supp.1988).

The second difference relates to the common-law rule of joint and several liability. Under the Uniform Act the common-law rule continues, meaning that regardless of contributory fault, the claimant may recover the total judgment against any defendant who is liable. *See* Unif. Comparative Fault Act § 2 comment, 12 U.L.A. 44 (Supp.1988). Under Iowa Code section 668.4, however, the rule is substantially modified. According to this provision, the rule does not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties.

### III. *Dram Shop Liability.*

At common law, courts refused to recognize a cause of action arising out of the sale or furnishing of intoxicating beverages. The rationale underlying this refusal was that, as a matter of law, the proximate cause of the injury is the act of the purchaser who drinks the intoxicating beverages and not the act of the vendor who sells them. 48A C.J.S. *Intoxicating Liquors* § 428, at 133–34 (1981). *But see* Rinden, *Judicial Prohibition? Erosion of the Common Law Rule of Non–Liability for Those Who Dispense Alcohol,* 34 Drake L.Rev. 937, 946–56 (1985–1986) (strong trend among state courts to recognize common-law action and to reject common-law rationale as to proximate cause).

A number of states have passed legislation known as dram shop acts. These statutes give innocent parties who are injured by the intoxication of other persons a right of action against the persons from whom the intoxicants were procured. 48A C.J.S. *Intoxicating Liquors* § 429, at 136. In Iowa such an action is afforded by Iowa Code section 123.92, which provides in part:

> Any person who is injured ... by an intoxicated person or resulting from the intoxication of a person, has a right of action for all damages actually sustained, severally or jointly, against any licensee or permittee, who sold and served any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated. If the injury was caused by an intoxicated person, a permittee or licensee may establish as an affirmative defense that the intoxication did not contribute to the injurious action of the person.

Besides awarding a mode of relief to such injured persons, who had no recourse under the common law, legislation of this type was enacted to

> protect the public, and the rights and interests of innocent persons who come within their scope and to discipline or restrain those engaged in the traffic of liquor.

48A C.J.S. *Intoxicating Liquors* § 429, at 136–37. Protection of the innocent is central to our dram shop statute. For that reason we have refused to allow recovery to those who have participated in the intoxicated person's intoxication by their complicity or assumption of the risk. *Gremmel v. Junnie's Lounge, Ltd.,* 397 N.W.2d 717,

720 (Iowa 1986). Only those who are innocent are protected by the statute. *Id.*

Several other unique features characterize our dram shop statute. For example, Iowa Code section 123.92 provides the exclusive remedy against a licensee or permittee for selling intoxicating beverages to an intoxicated person. *Snyder v. Davenport*, 323 N.W.2d 225, 227 (Iowa 1982). Thus, no common-law cause of action against a licensee or permittee for selling intoxicating beverages to an intoxicated person exists in Iowa. *Id.* In addition, contributory negligence is not a defense to an Iowa dram shop action. *Williams v. Klemesrud*, 197 N.W.2d 614, 617 (Iowa 1972). Nor do the ordinary concepts of proximate cause strictly apply. *Id.* Under *Walton v. Stokes*, 270 N.W.2d 627, 628–29 (Iowa 1978), an injured party seeking recovery under section 123.92 does not have to show a causal relationship between the intoxication and the injuries. In response to *Walton*, the legislature made proximate cause an affirmative defense. *See* Iowa Code § 123.92 (1987). Finally, our dram shop law incorporates by express language the common-law rule of joint and several liability. *See id.*

IV. *Indicia of Legislative Intent Against Comparative Fault as a Defense to a Dram Shop Action.*

Our dram shop statute in one form or another has been in existence since 1862. *See* 1862 Iowa Acts ch. 47, § 2. Our comparative fault chapter is of recent origin. The question whether comparative fault is a defense to a dram shop action boils down to whether the legislature intended such a result. Because there is no clear indication in either statute as to this question, we resolve it by the application of familiar principles of statutory construction. *See* Iowa Code § 4.6.

In determining the legislature's intent, we consider the language of the statute, the objects sought to be accomplished, and the evils sought to be remedied. *State v. Akers*, 435 N.W.2d 332, 334 (Iowa 1989). We also consider the consequences of a particular construction. Iowa Code

§ 4.6(5). In determining the legislature's intent on this question, we must keep in mind that our function is not to question the wisdom of legislation. *Hines v. Illinois Cent. Gulf R.R.*, 330 N.W.2d 284, 289 (Iowa 1983). Nor is it our function to write into law what the legislature might or should have said. *Dolezal v. City of Cedar Rapids*, 326 N.W.2d 355, 359 (Iowa 1982).

Because we are dealing with the interaction of two statutes, one of considerable vintage and the other of recent origin, one other principle of statutory construction figures importantly in our analysis. That principle provides that when the legislature acts with respect to a previously enacted statute, it is presumed to know how we have construed and applied it. *State ex rel. Palmer v. Board of Supervisors*, 365 N.W.2d 35, 37 (Iowa 1985).

Applying these principles of statutory construction, we are convinced the legislature did not intend comparative fault to be a defense to a dram shop action. We can see several important indicia of legislative intent against such a result.

As we said, our comparative fault statute is patterned after the Uniform Act. Thus, we consider the official comments to the Uniform Act to have persuasive influence. *See* 2A N.J. Singer, *Sutherland Statutory Construction* § 52.05, at 546 (revised ed. 1984). The comment to section 1 of the Uniform Act provides some clues to the legislature's intent on our question. According to the comment,

[a] tort action based on violation of a statute is within the coverage of the Act if the conduct comes within the definition of fault and *unless the statute is construed as intended to provide for recovery of full damage irrespective of contributory fault.*

Unif. Comparative Fault Act § 1 comment, 12 U.L.A. 39 (Supp.1988) (emphasis added).

Clearly then, the intent of the Uniform Act is to cover tort actions based on violation of statute if the conduct is within the definition of fault. It is equally clear that there is no coverage if the statute has been

interpreted to provide for full recovery regardless of contributory fault.

Leaving aside for the moment the definitional condition, we turn our attention to the exception in the comment. As we said, if the statute in question has been construed to provide for full recovery regardless of contributory fault, the statutory tort action is not covered. We have construed our dram shop statute in just such a manner.

Before comparative fault supplanted comparative negligence, we held that contributory negligence was no defense to a dram shop action. *Williams*, 197 N.W.2d at 617. Following our adoption of comparative negligence in *Goetzman*, we similarly held that this newly adopted doctrine was no defense to a dram shop action. *Martin v. Heddinger*, 373 N.W.2d 486, 488–89 (Iowa 1985) (holding based only on common-law doctrine; statutory comparative fault not considered). Thus, the Iowa legislature was presumed to know that the dram shop action provided by section 123.-92 was "construed as intended to provide for recovery of full damage irrespective of contributory fault."

Given this history and consistent with the exception from the comment to section 1 of the Uniform Act, a persuasive argument can be made that the legislature intended to exclude dram shop actions from chapter 668 coverage. Such an exclusion makes sense because fault is the cornerstone of any comparative fault statute. If the plaintiff's fault is irrelevant in an action based upon a statutory violation, then it is illogical to subject the action to a comparative fault defense.

We have, then, one important indication that the legislature did not intend to include dram shop actions within chapter 668 coverage. Or, to put it in terms of our issue, the legislature did not intend comparative fault to be a defense to a dram shop action.

Buttressing this conclusion is the legislature's inaction in regard to the statutory language. Had it intended chapter 668 to cover dram shop actions, the legislature could easily have said so.

For example, in 1977 the Minnesota Legislature handled the problem by simply amending its dram shop statute and expressly providing that dram shop victims were to be governed by its comparative negligence statute. *See* Act of June 2, 1977, ch. 390, § 1, 1977 Minn.Laws 887. The amendment added the following language to the state's dram shop statute:

> Actions for damages based upon liability imposed by this section shall be governed by section 604.01 [comparative negligence statute]. The provisions of section 604.01, as applied under this section, however, shall not be applicable to actions brought by a husband, wife, child, parent, guardian or other dependent of an intoxicated person.

One year later, Minnesota adopted comparative fault by simply amending its comparative negligence statute, section 604.01. Act of April 5, 1978, ch. 738, §§ 6, 7, 1978 Minn.Laws 836, 839–40. The definition of fault adopted by Minnesota tracks our own definition of fault in section 668.1(1).

Returning now to the definitional condition of the comment to section 1 of the Uniform Act, we note that "fault" in section 668.1(1) includes "strict tort liability." It is true that we have characterized our dram shop statute as imposing strict liability. *See Gail v. Clark*, 410 N.W.2d 662, 667 (Iowa 1987) ("[W]e have recognized assumption of risk as a defense to a dram shop action even though the action is in the nature of strict liability."); *Berge v. Harris*, 170 N.W.2d 621, 627 (Iowa 1969) ("The fact that the dram shop act imposes strict liability does not prevent defendant from raising assumption of risk as a defense."). Because the legislature is presumed to know how we have characterized dram shop liability, an argument could be made that it intended chapter 668 to cover dram shop actions.

■ We think, however, that there is a significant difference between the phrase "strict tort liability" in section 668.1 and what our cases call strict liability imposed by our dram shop statute. Strict liability imposed by section 123.92 is not common-

law strict tort liability to which section 668.1(1) refers. In a common-law strict tort liability case, the plaintiff is free to prove every available state of facts to establish liability. In contrast, the dram shop plaintiff is strictly limited to one set of facts to establish liability:

> [whether the] licensee or permittee ... sold and served any [intoxicating beverages] to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated.

Iowa Code § 123.92; *see also Connolly v. Conlan,* 371 N.W.2d 832, 833 (Iowa 1985); *Snyder v. Davenport,* 323 N.W.2d 225, 226–27 (Iowa 1982).

Moreover, as we previously suggested, our dram shop statute is sui generis. Conceived as a means to create liability where none existed at common law, the statute created a new cause of action unrelated to and different from any other. As we said, the statute provides the exclusive remedy against a liquor licensee or permittee for violation of the statute, recognizes no defense of contributory fault, and applies its own rules of proximate cause.

The legislature is presumed to know that we have thus interpreted our dram shop statute. Additionally, it is presumed to have been aware of the difference noted between the traditional common-law strict tort liability and the strict liability imposed by the statute. We think, therefore, the legislature would have made its intention more clear than it did that "fault" in section 668.1(1) includes dram shop liability, if that had indeed been its intention. This, then, is another indication of legislative intent against affording comparative fault as a defense to actions under section 123.92.

There are other indicia of the legislature's intention. One significant example involves the common-law rule of joint and several liability, a rule which permits recovery of the total judgment against any one defendant.

Since 1966, joint and several liability has been a part of section 123.92. *See Wendelin v. Russell,* 259 Iowa 1152, 1161–62, 147 N.W.2d 188, 194 (1966) (joint and several liability first appeared in section 123.95, now section 123.92) ("[Dram shop statute] specifically provides the defendants may be jointly and severally liable, which provision is absent in the old law."). Section 123.92 in its present form allows a dram shop plaintiff to recover *"all* damages actually sustained, *severally or jointly."* (Emphasis added.)

In contrast, when chapter 668 was enacted in 1984, the joint and several liability rule was abrogated as to all defendants who are found to bear less than fifty percent of the total fault assigned to all parties. Iowa Code § 668.4. Clearly, there is an irreconcilable difference between the two statutes as to the rule. Yet the legislature made no corresponding change in the joint and several liability rule of section 123.92 that would have made it consistent with section 668.4. The legislature passed up the chance to do just that in 1985 when it amended section 123.92. This was only one year after chapter 668 was enacted, when comparative fault should have been fresh in the minds of the legislators.

Before the 1985 amendment section 123.92 read in part:

> Every ... person who shall be injured ... *shall have a right of action, severally or jointly,* against any licensee or permittee, [who violates section 123.92] *for all damages actually sustained.*

(Emphasis added.) Significantly, the amendment directly addressed the language dealing with joint and several liability:

> Any person who is injured ... *has a right of action for all damages* actually sustained, *severally or jointly* ....

*See* 1985 Iowa Acts ch. 32, § 57. The legislature could have easily added "subject to section 668.4," had it desired to reconcile the two rules separately stated in each section. The legislature again passed up the chance in 1986 when it amended section 123.92 to its present form and add-

ed several sections to chapter 668. *See* 1986 Iowa Acts ch. 1211, §§ 12, 40, 41.

Thus, we have significant inaction on the part of the legislature that signifies its intent. Although not conclusive, this inaction is persuasive evidence that the legislature did not intend to subject dram shop liability to comparative fault.

Another indication of legislative intent concerns the dram shop defenses of assumption of risk and complicity. Fault in section 668.1(1) includes assumption of risk. Yet the statute excludes complicity. Did the legislature intend the anomalous result that only one of two dram shop defenses should be included? We should avoid this impracticable and unreasonable result if a more reasonable one is possible. *See Ida County Courier and the Reminder v. Attorney Gen.*, 316 N.W.2d 846, 851 (Iowa 1982). And one is.

In *Rosenau v. City of Estherville* we defined assumption of risk:

> The term "assumption of risk" as used by courts, assumes two meanings. (1) In one sense, it is an alternative expression for the proposition that defendant was not negligent, *i.e.*, either owed no duty or did not breach the duty owed. This "primary meaning" is illustrated by the case in which an employee is injured by a danger naturally incident to the employment, even though the employer has exercised all reasonable care for his safety. (2) In its "secondary meaning" the term is used where the injured person acted unreasonably in assuming a particular risk, and the defense of assumption of risk coincides with the defense of contributory negligence. In this sense, assumption of risk is an affirmative defense to an established breach of duty.

199 N.W.2d 125, 131 (Iowa 1972). To avoid "duplicitous instructions on a single aspect of the case," we abolished assumption of risk as a separate defense in all cases in which contributory negligence was a defense. We retained assumption of risk in other cases. *Id.* at 132–33. One of those other cases includes strict tort liability in the products liability field. *See Hawkeye*

*Sec. Ins. Co. v. Ford Motor Co.*, 199 N.W. 2d 373, 381 (Iowa 1972).

Assumption of risk in its secondary meaning is "fault" within the meaning of the Uniform Act. Assumption of risk in its primary meaning is not included. *See* Unif. Comparative Fault Act § 1 comment, 12 U.L.A. 40 (Supp.1988).

We think assumption of risk is included as fault in our comparative fault statute because there is at least one common-law theory of action included to which the defense has application. That theory is strict tort liability in products liability cases. Although section 668.1(1) uses the generic term "strict tort liability," we think it includes products liability. It may include others. The comment to section 1 of the Uniform Act supports our conclusion:

> Although strict liability is sometimes called absolute liability or liability without fault, it is still included. *Strict liability* for both abnormally dangerous activities and *for products* bears a strong similarity to negligence as a matter of law (negligence per se), and the factfinder should have no real difficulty in setting percentages of fault. *Putting out a product that is dangerous to the user or the public* or engaging in an activity that is dangerous to those in the vicinity involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence.

Unif. Comparative Fault Act § 1 comment, 12 U.L.A. 39 (Supp.1988); *see also Speck v. Unit Handling Div.*, 366 N.W.2d 543, 546 (Iowa 1985) (dictum) ("[chapter 668's] definition of fault extends comparative negligence principles to cases involving allegedly defective products regardless whether strict liability or negligence is pleaded").

Thus, a logical explanation for our seemingly anomalous result is that assumption of risk is included in fault because there are common-law theories of action also included to which the defense has application. In these circumstances, the legislature was compelled to include assumption of risk. To do otherwise would have thrown our tort law into chaos.

By deleting complicity, a defense pertaining uniquely to dram shop liability, the legislature was clearly indicating an intent to leave dram shop liability out of the fault definition. In addition, the dram shop assumption of risk defense is also unique because it relates to only one assumed risk: intoxication. Arguably then, the legislature only had in mind assumption of risk pertaining to common-law theories of action, and not to the exclusive remedy in section 123.92.

What would be the consequences if we said comparative fault is a defense to dram shop liability? As we mentioned, this is a legitimate concern in the interpretation of statutes. We turn our attention then to the consequences.

We have been consistently faithful to our belief that the benefits of section 123.92 should be reserved for innocent parties. *See, e.g., Fuhrman v. Total Petroleum, Inc.*, 398 N.W.2d 807, 810 (Iowa 1987). This belief flows from our recognition that the dram shop statute was originally designed to protect only innocent parties. Innocent parties, we have said, are " 'only those who have not participated in the intoxicated person's intoxication by their complicity or assumption of risk.' " *Gremmel v. Junnie's Lounge, Ltd.*, 397 N.W.2d 717, 720 (Iowa 1986). The risk assumed is that of intoxication. *Id.* at 720–21.

To hold that comparative fault is a defense to a dram shop action would, in essence, eviscerate our innocent party rationale in two respects. First, if dram shop liability is included in fault, it logically follows that assumption of risk and complicity as dram shop defenses should also be included. Given the comprehensive nature of the comparative fault statute, it makes no sense to include a cause of action in the definition of "fault" without including defenses that are unique to that action. If that were the case, however, the two defenses would no longer completely bar recovery. Noninnocent parties would be able to sue and recover under section 123.92.

Such an interpretation would produce an anomalous result. The intoxicated person is denied recovery. *See Robinson v. Bog-*

*nanno*, 213 N.W.2d 530, 532 (Iowa 1973). Yet the participating accessory to the violation of our liquor laws would be afforded a remedy for injuries to which the intoxication of his drinking companion contributed. Likewise, the dram shop defendant, another law violator, would be allowed a defense. In these circumstances, our public policy of providing for control and regulation of the sale of intoxicating beverages would be frustrated. *See* Iowa Code § 123.1. Rather than encouraging compliance with chapter 123, such an interpretation would discourage it.

Another way our innocent party rationale would be undermined relates to contributory negligence. We have never excluded from the class of innocent parties one who has committed an act of contributory negligence unrelated to the drinking activities leading to the innocent party's injuries. *See, e.g., Martin*, 373 N.W.2d at 488. This concept has been stated in the form of a restatement rule, which provides that

[t]he plaintiff's contributory negligence bars his recovery for the negligence of the defendant consisting of the violation of a statute, unless the effect of the statute is to place the entire responsibility for such harm as has occurred upon the defendant.

Restatement (Second) of Torts § 483 (1965).

The rationale for the Restatement rule is explained in its comment c:

There are ... exceptional statutes which are intended to place the entire responsibility for the harm which has occurred on the defendant. A statute may be found to have that purpose particularly where it is enacted in order to protect a certain class of persons against their own inability to protect themselves.

That rationale coincides exactly with our own strong public policy underlying section 123.92. Our policy provides protection to innocent parties even though contributorily negligent in respects unrelated to the intoxication. Such a policy is necessary because innocent parties, being unaware of the tortfeasor's intoxication and having no involvement in it, cannot protect themselves from

the risk the statute was designed to control. That risk is the unpredictable behavior of intoxicated persons. The liability of the dram shop licensee is strict because the licensee is in a superior position to protect others from this risk. A decision contrary to what we decide today would weaken our policy to the extent that an innocent party's contributory negligence unrelated to the drinking activities is allowed to be compared as fault.

Finally, were we to reach a different result, we think the dram shop statute's use as a meaningful remedy would be seriously impaired. Such a consequence directly conflicts with the construction required by Iowa Code section 123.1 and our cases. In section 123.1, the legislature has expressly stated that public policy requires chapter 123 to be liberally construed. Consistent with that policy, we have declined to strictly construe our dram shop statute because such a construction "would limit the scope of the act ... and advance the mischief sought to be corrected." *Williams*, 197 N.W.2d at 615. In addition, we have described the statute as remedial and compensatory. *Id.*

The following scenario is a good example of how the remedy could be impaired. In our hypothetical dram shop case, the plaintiff is seriously injured in an automobile collision with an intoxicated person who, shortly before the accident, became intoxicated in the defendant tavern. The plaintiff had nothing to do with the intoxicated tortfeasor's drinking activities and was unaware of the person's condition. The intoxicated tortfeasor is insolvent, a fact the plaintiff is well aware of when suit is filed. Consequently, only the tavern is sued.

The tavern's strategy, of course, is to avoid as much fault as possible. So in its answer, it alleges comparative fault as a defense to plaintiff's dram shop allegations and joins the intoxicated tortfeasor as a third-party defendant.

At trial the plaintiff, of course, is limited as to what fault the plaintiff may establish against the tavern. The tavern, on the other hand, is not handicapped in this way. The facts show that the collision was due, in large part, to the intoxicated tortfeasor's negligence resulting from that person's impaired condition. The plaintiff's own negligence was also a cause. Consequently, the tavern easily convinces the jury to assign seventy percent of the fault to the intoxicated tortfeasor and ten percent to the plaintiff. The plaintiff is only able to convince the jury to assign the remaining twenty percent to the tavern.

The practical result is that the plaintiff is forced to financially assume eighty percent of the damages: ten percent due to the plaintiff's own fault and seventy percent due to the intoxicated tortfeasor's fault. In contrast, the tavern, which violated the provisions of section 123.92, pays only twenty percent of the damages and is insulated against the other eighty percent. Of course, absent the availability of comparative fault as a defense, the tavern would be responsible for all the damages, because under our hypothetical facts the plaintiff is an innocent party.

The scenario we have just described is not an unlikely one. In a dram shop case, an intoxicated tortfeasor is usually involved in an underlying tort of some kind that is easily provable. Often, such a tortfeasor is insolvent. The jury might find it difficult to overcome the temptation to apportion most of the fault to the intoxicated tortfeasor, as the dram shop defendant would be urging.

We can, if we so choose, ameliorate this result by not applying the joint and several liability rule of section 668.4 to dram shop cases. We can fall back on the joint and several liability rule of section 123.92 and hold that as a special statute dealing with joint and several liability it is an exception to section 668.4. *See* 2A N.J. Singer, *Sutherland Statutory Construction* § 51.05, at 499–500 (revised ed. 1984); *see also Balster v. State*, 360 N.W.2d 788, 790 (Iowa 1985). The problem with this approach is that chapter 668 deals comprehensively not only with tort liability but also with joint and several liability. The rules of statutory construction in these circumstances dictate that section 668.4 should supersede section 123.92. *See* 2A N.J. Singer, *Sutherland*

*Statutory Construction* § 51.05, at 501. A contrary holding would simply be judicial legislation in the guise of judicial interpretation.

Even if we were to apply the joint and several liability rule in section 123.92, the results in our hypothetical would not be completely ameliorated. The plaintiff, an innocent party, would still be charged with ten percent fault for acts completely unrelated to the drinking activities.

We recognize that the decision we reach in this case is seemingly inconsistent with our recent holding in *Schreier v. Sonderleiter,* 420 N.W.2d 821 (Iowa 1988). In *Schreier* we said that one dram shop could properly maintain a cause of action against another dram shop for contribution. *Id.* at 824. We seemed to imply that dram shop claims for contribution should be tried according to our comparative fault provision, section 668.5. *Id.* at 825. That implication, however, was dictum because comparative fault principles were not utilized in the primary action. Consequently, we said the parties appropriately applied contribution principles other than those in section 668.5. *Id.* at 825. In view of our holding here, we reject the apparent implication of *Schreier.*

Clearly, mingling these two statutes would seriously undermine, if not obliterate, the carefully conceived policies underlying our dram shop statute, not to mention overruling years of precedent. Before we conclude the legislature intended such consequences, we should expect, at the very least, that it expressly say so. We, however, should not supply the words.

### V. *Disposition.*

After applying appropriate principles of statutory construction, we conclude the legislature did not intend to afford a comparative fault defense to a dram shop action. The district court correctly sustained the plaintiffs' motion to strike the defense. We, therefore, affirm.

AFFIRMED.

All Justices concur except McGIVERIN, C.J., and HARRIS and NEUMAN, JJ., who dissent.

CARTER, J., takes no part.

McGIVERIN, Chief Justice (dissenting).

The majority opinion upholds the trial court decision to strike the affirmative defense of comparative fault from defendant's answer in this dramshop action.

I disagree and respectfully dissent.

The sole issue in this appeal is whether liability under the Iowa dram shop act, Iowa Code section 123.92, is among the kinds of "fault" to be compared under our comparative fault act, Iowa Code chapter 668. I believe our legislature intended that comparative fault principles apply to actions in tort including those brought under the dram shop statute. Accordingly, we should recognize that dram shop liability is "fault" to be compared under the comparative fault act.

I. *The Comparative Fault Act, Iowa Code chapter 668.* In *Martin v. Heddinger,* 373 N.W.2d 486, 489 (Iowa 1985), we rejected a request that we apply comparative negligence principles to actions brought under the Iowa dram shop act. At that time, Iowa's comparative fault act was not applicable and our holding instead relied primarily on now outdated comparative negligence principles created by our decision in *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1983).

We began our discussion in *Martin* with the rule that contributory negligence is not a defense to a dram shop case in Iowa. *Martin,* 373 N.W.2d at 488, citing *Williams v. Klemesrud,* 197 N.W.2d 614, 617 (Iowa 1972). That conclusion was derived in part from our reasoning that dram shop liability was strict liability, without negligence, and that contributory negligence was not a defense to strict liability actions. *See Williams,* 197 N.W.2d at 617. We also recognized that *Goetzman* did not apply the comparative negligence rule to strict liability in tort. *Martin,* 373 N.W.2d at 488, citing *Speck v. Unit Handling Div., Litton Sys., Inc.,* 366 N.W.2d 543, 545 (Iowa 1985). Based on this reasoning, we declined to apply *Goetzman* to actions based on the dram shop act. *Martin,* 373 N.W.2d at 488–89.

Since *Martin,* and before the time in which the present claim arose, the legislature enacted Iowa Code chapter 668. Entitled *Liability in Tort—Comparative Fault,* the chapter is a comprehensive act modifying Iowa tort law in many respects and replacing those principles adopted in *Goetzman.* The chapter concerns comparative *fault* rather than comparative negligence and defines fault as follows:

As used in this chapter, "fault" means one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

Iowa Code § 668.1(1) (1987).

It is at once apparent that the concept of "fault" as defined above is more comprehensive than our prior notions of contributory negligence under *Goetzman.* Where we limited the comparative negligence doctrine to apply only to actions in which contributory negligence had previously been a complete defense, *Goetzman,* 327 N.W.2d at 754, the definition of fault in section 668.1(1) obviously pertains to actions not simply based on negligence, but also those alleging recklessness, as well as strict tort liability. In light of this observation, it is necessary to reexamine our decisions concerning the dram shop act to ultimately determine whether liability under that act should be considered "fault" under section 668.1(1).

II. *Liability under Iowa Code section 123.92.* The Iowa dram shop act was amended in 1986 and made applicable to all actions filed after July 1, 1986, including the present action. 1986 Iowa Acts ch. 1211 §§ 12, 47. The current act provides in part:

Any person who is injured in person or property or means of support by an intoxicated person or resulting from the intoxication of a person, has a right of action for all damages actually sustained, severally or jointly, against any licensee or permittee, who sold and served any beer, wine or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated. If the injury was caused by an intoxicated person, a permittee or licensee may establish as an affirmative defense that the intoxication did not contribute to the injurious action of the person.

Iowa Code § 123.92 (1987).

Liability under the statute has most consistently been characterized as "strict liability". *See Haafke v. Mitchell,* 347 N.W.2d 381, 387 (Iowa 1984); *Williams v. Klemesrud,* 197 N.W.2d 614, 617 (Iowa 1972); *Berge v. Harris,* 170 N.W.2d 621, 627 (Iowa 1969); *see also* Schubert, *The Iowa Dram Shop Act—Causes of Action and Defenses,* 23 Drake L.Rev. 16 (1973). In the past we have styled the cause of action under the statute as "statutory not standing in tort." *Wendelin v. Russell,* 259 Iowa 1152, 1160, 147 N.W.2d 188, 193 (1966). More recently, however, section 123.92 has been described as an effort by the legislature to "set the metes and bounds of *recovery rights in tort suits* based on the sale or furnishing of intoxicants." *Fuhrman v. Total Petroleum, Inc.,* 398 N.W.2d 807, 808 (Iowa 1987) (emphasis added).

In its current form, the statute is phrased in language particularly indicative of tort theory in that liability is based on service to a person when "the licensee ... knew or should have known the person was intoxicated" or "would become intoxicated." *See* 57 Am.Jur.2d *Negligence* § 54 at 402 (1971) ("Fundamentally, the duty of a person to use care and his liability for negligence depend on the tendency of his acts under the circumstances as they are known or should be known to him.").

Historically, dram shop statutes were created to fill a void left empty at common law. Courts were unwilling to recognize a common law cause of action against purveyors of intoxicating beverages because, as a matter of law, consumption, rather than the furnishing of alcohol, was considered the proximate cause of the ultimate damages. *See Haafke*, 347 N.W.2d at 384; *Snyder v. Davenport*, 323 N.W.2d 225, 226 (Iowa 1982). Thus, dram shop statutes were enacted to enable tort plaintiffs to bridge the proximate cause gap between the sale of an intoxicating beverage and the subsequent injury or damage caused by the intoxicated patron. In exchange for this new claim, the legislature mandated that liquor purveyors were strictly liable and carefully prescribed the means by which liability may be ascertained. *Snyder*, 323 N.W.2d at 227.

The statute limits recovery for injuries caused by the intoxication of the dram shop patron. The last sentence of the portion of section 123.92 quoted above provides that the dram shop may assert an affirmative defense that the intoxication was not a proximate cause of the patron's injurious action. *See Gremmel v. Junnie's Lounge, Ltd.*, 397 N.W.2d 717, 721 (Iowa 1986) (defense that intoxication was not a proximate cause of plaintiff's injuries was available upon showing that animosity between combatants and not intoxication precipitated assault).

The rise of the claim created by section 123.92 extending liability to liquor purveyors is mirrored by the recent genesis of separate common law actions against those who sell or provide liquor in violation of criminal statutes. *See Lewis v. State*, 256 N.W.2d 181, 191–92 (Iowa 1977) (holding, in a case in which negligence was based on the illegal sale of alcohol to a minor in violation of Iowa Code section 123.43 (now section 123.47), that proximate cause was an issue to be resolved by the finder of fact); *Haafke v. Mitchell*, 347 N.W.2d 381, 385 (Iowa 1984) (holding tavern employees could be held liable for negligently furnishing alcohol to a patron in violation of a criminal statute or ordinance); *Bauer v. Dann*, 428 N.W.2d 658, 661 (Iowa 1988)

(holding a common law cause of action exists against a non-licensee who furnishes alcohol to a minor in violation of Iowa Code section 123.47 where the minor subsequently causes the plaintiff's injuries); *see also* Rinden, *Judicial Prohibition? Erosion of the Common Law Rule of Non–Liability for Those Who Dispense Alcohol*, 34 Drake L.Rev. 937 (1985–86). The coexistence of section 123.92 dram shop claims and these analogous claims sounding in negligence underscores the relationship between recovery under the dram shop act and recovery in tort.

Similarly, enforcement of the dram shop act has incorporated principles sounding in tort. We have recognized certain contributory conduct defenses in dram shop actions. In *Berge v. Harris*, 170 N.W.2d at 627, we found that assumption of risk "is a distinctive kind of contributory negligence" and held that a defendant under the dram shop act was entitled to urge assumption of risk in its defense. (Notably, Iowa Code section 668.1(1) explicitly provides that assumption of risk is "fault" to be compared under chapter 668.) In the same case we recognized that a plaintiff's complicity in the intoxication of the patron precludes recovery under the dram shop act. *Id.* at 625, citing *Engleken v. Hilger*, 43 Iowa 563, 564 (1876). In *Martin*, 373 N.W.2d at 489, this court once again recognized the relationship between these two dram shop defenses and contributory negligence, but declined to allow general contributory negligence principles in dram shop cases before enactment of chapter 668.

These two defenses to dram shop liability, complicity and assumption of risk, have been recognized by this court in an effort to further the purposes of the dram shop act. As we stated in *Berge*, 170 N.W.2d at 626:

> We find nothing in the statute suggesting that an injured party should be allowed to recover regardless of his conduct. The doctrine of complicity is a recognition of the fact that the right to recover is limited to innocent persons. One who knowingly rides with a drunken driver can hardly be included in that cat-

egory. We find no statutory bar to the application of assumption of risk.

We do not believe the defense of assumption of risk will interfere with the purpose of the statute. "The dram shop act is designed to fulfill a need for discipline in the traffic of liquor and to provide a remedy for evils and dangers that flow from such traffic." *Osinger v. Christian,* [43 Ill.App.2d 480, 485, 193 N.E.2d 872, 875 (1963)]. The evil and danger that we are concerned with here is that a person in an intoxicated condition might unintentionally, but as a result of his intoxication, injure some other party. We do not believe it contributes to the fulfillment of this purpose if the injured party is given no responsibility for his own welfare.

In *Gremmel v. Junnie's Lounge, Ltd.,* 397 N.W.2d 717 (Iowa 1986), we held that the defense of assumption of risk was available to a dram shop defendant where the injuries arose from an altercation with an intoxicated patron. The risk that is assumed is the potential for injury, not intoxication. *Id.* at 720, ("[A]s a matter of public policy we should discourage tavern fights by imposing upon dram shop plaintiffs the responsibility for *assuming the risk of their own injuries* when they voluntarily choose to become involved in altercations with persons who, they believe, are intoxicated.") (Emphasis added.) We found in *Gremmel* that plaintiffs who assent to combat with intoxicated persons are not "innocent persons" entitled to protection under the statute and that "[n]ot to allow the defense would be tantamount to allowing these plaintiffs to profit from their own wrongdoing." *Id.*

Against this historical backdrop, I would conclude that liability under section 123.92 is not *sui generis,* and is therefore not so unique as to warrant a distinction from other types of unintentional tort liability. Next, I will examine whether dram shop liability is among the kinds of fault to be compared under chapter 668.

III. *Dram shop liability as "fault" under the comparative fault act.* In determining the relationship between section 123.92 and chapter 668, and more specifically section 668.1(1), we are guided by the rules set out in Iowa Code chapter 4. Iowa Code section 4.7 provides in part, "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both." Iowa Code section 4.2 states, "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

In this regard, I note that the purposes of the dram shop act are to "place a hand of restraint on those licensed or permitted by law to sell or supply intoxicants to others and to protect the public, but above all to provide an avenue of relief to those offended who had no recourse or right of action under the common law." *Wendelin v. Russell,* 259 Iowa 1152, 1158, 147 N.W. 2d 188, 192 (1966). The design of the comparative fault act, on the other hand, is to provide a comprehensive framework for the assessment and apportionment of liability for harm among affected parties, and to provide a right of contribution among liable parties.

Assumption of risk is expressly among those kinds of conduct considered "fault" under section 668.1(1). Complicity is a form of comparative negligence, *Martin,* 373 N.W.2d at 489, and negligence too, is expressly provided to be "fault" by section 668.1(1). Thus, contrary to the indications from the majority opinion, the legislature has directed that a plaintiff's assumption of risk and complicity should mitigate but not bar a plaintiff's recovery rights in tort. Under the majority opinion, however, these defenses are comparative in all tort actions except those arising under the dram shop act where they remain complete defenses.

I believe that ruling these defenses to be comparative better serves the goals and purposes of both acts. By allowing finders of fact to weigh a plaintiff's assumption of risk against a dram operator's liability under the dram shop act, the plaintiff's recov-

ery may be discounted to the degree the plaintiff is *responsible* for his or her own injuries. *Berge*, 170 N.W.2d at 626. Similarly, by not erecting an absolute bar to liability, liquor purveyors whose conduct violates the dram shop act will remain liable for the harm attributable to. that conduct.

In *Berge* it was observed that these complete defenses do not interfere with the purpose of the dram shop act. This conclusion, however, is not entirely true. Because of these defenses, instances arise in which dram shop operators violate the statute, but are not "disciplined" with liability. The two dram shop defenses are at times swords instead of shields because complicity and assumption of risk preclude recovery against irresponsible providers of intoxicants. Indeed, a tavern that serves two drinking companions past the point of intoxication cannot be held liable if one of these patrons injures the other. By ruling comparative fault principles apply, discipline in the form of liability would be enforced whenever a dram shop violates the statute. This discipline would be meted out to the degree the excessively furnished alcohol contributed to the injury.

Clearly such a result is in harmony with the design of the comparative fault act. Liability for harm would be rested upon those responsible for the harm. Damages, in turn, would be assessed in proportion to the degree of the party's responsibility.

Although this is the first occasion in which this court has addressed dram shop liability as "fault" under section 668.1, it is not the first occasion in which dram shop liability has been considered in light of our comparative fault act. In *Schreier v. Sonderleiter*, 420 N.W.2d 821, 824–25 (Iowa 1988), a claim for contribution between two dram shops was recognized and proportional allocation of fault between them was upheld. Adopting the reasoning of a Minnesota supreme court decision, our court held that a dram shop may bring a contribution action against another dram shop because this contribution would "distribute the burden of liability among those commonly liable equally, increase the incen-

tive of all licensed vendors to guard against all illegal sales, and spread more equitably the economic loss resulting from violations upon the liquor industry." *Id.* at 824, quoting *Skaja v. Andrews Hotel Co.*, 281 Minn. 417, 424, 161 N.W.2d 657, 661 (1968). The majority's holding today, that "fault" under section 668.1(1) does not include dram shop liability, is a retreat from our decision in *Schreier*.

Furthermore, application of comparative fault to dram shop actions would provide a degree of clarity and equity previously lacking in our liquor liability jurisprudence. Liability based on violations of a criminal statute such as those actions recognized in *Bauer*, *Haafke*, and *Lewis*, obviously would be subject to defenses based on comparative fault because those claims sound in negligence. By its terms, section 668.-1(1) would make the same defense available to a permittee or licensee whose conduct results in liability under section 123.92. The "strict" liability under section 123.92 does not make a difference in this regard. Section 668.1(1) clearly applies to actions based on strict liability as well as negligence. The common ground between these claims finding liability based upon furnishing liquor, far outweighs the differences between the statutory and common law claims. This fact compels a common approach with respect to comparable fault.

Similarly, an intoxicated dram shop patron who negligently injures another may assert the plaintiff's comparative fault in his own defense. The legislature has expressed its intention that this defense also should be made available to the dram shop defendant who shares common liability with its patron. *See Federated Mut. Implement and Hardware Ins. Co. v. Dunkelberger*, 172 N.W.2d 137, 142 (Iowa 1969) ("'Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.'" (quoting *Farmers Ins. Exchange v. Village of Hewitt*, 274 Minn. 246, 249, 143 N.W.2d 230, 233 (1966))).

To hold otherwise, as the majority does, the anomalous result can arise where an

intoxicated dram shop patron is liable for only a small amount of a plaintiff's loss, yet the licensee, who is more remote from the cause of the plaintiff's injuries, will remain completely liable for the whole of a plaintiff's loss. This is but one example where the dram shop statute would fail to compensate only *innocent* persons and instead would compensate all dram shop plaintiffs, even those whose injuries are predominately due to their own actions. This result is certainly at odds with the goals articulated in *Berge,* 170 N.W.2d at 626, that an injured party should not be allowed to recover for injuries regardless of his or her own conduct.

The dram shop statute, as applied under chapter 668, would continue to compensate innocent persons from harm caused by intoxicated individuals. Such a construction would also continue to provide the needed discipline in the traffic of liquor by placing responsibility for what harm is caused by intoxicated patrons with those who profit by the sale of the intoxicating liquors.

IV. *Other indicia of legislative intent favoring comparative fault as a defense in dram shop actions.* The majority's position relies in part on its resolution of an issue not involved in the present case. That issue concerns whether Iowa Code section 668.4 or Iowa Code section 123.92 would control the joint and several liability of a defendant dram shop when other defendant tort-feasors are in the case. Section 668.4 pertains generally to joint and several liability in all tort actions. Section 123.92, on the other hand, addresses joint and several liability in only one kind of action, dram shop actions. In the event of a conflict, I believe the more specific statute, section 123.92, should control. *See* Iowa Code § 4.7 (1987); *In re Marriage of Baculis,* 430 N.W.2d 399, 404 (Iowa 1988). That issue is not properly before this court now, however, and should not affect our analysis of whether a dram shop case comes under "strict tort liability" for the purposes of section 668.1.

A. *The fault rather than negligence standard.* As the majority correctly points out, when the legislature acts with respect

to a previously enacted statute, it is presumed to know how we have construed and applied the statute. *State ex rel. Palmer v. Board of Supervisors,* 365 N.W.2d 35, 37 (Iowa 1985). Prior to the enactment of chapter 668, this court held that contributory negligence was not a defense to a dram shop action. *Williams v. Klemesrud,* 197 N.W.2d 614, 617 (Iowa 1972). Had the legislature subsequently enacted a comparative *negligence* act, we certainly would have been provided strong evidence that dram shop actions would not apply under the act.

Here, however, the legislature reached beyond our previous pronouncements and enacted legislation based upon fault rather than negligence. The obvious implication of this action is that the legislature intended that comparative fault principles apply in actions that we previously held were not subject to comparative negligence. As designed, chapter 668 applies to dram shop actions.

B. *The comments to the uniform act.* The majority finds support for its position in the comment to the uniform act which provides:

A tort action based on violation of a statute is within the coverage of the Act if the conduct comes within the definition of fault and *unless the statute is construed as intended to provide for recovery of full damages irrespective of contributory fault.*

Unif. Comparative Fault Act § 1 comment, 12 U.L.A. 39 (Supp.1988) (emphasis added). As discussed above, I believe conduct creating liability under the dram shop act fits within the definition of fault found in section 668.1(1). With regard to the comment's exception, the majority concludes that our dram shop act is construed to provide for full recovery regardless of contributory fault. This conclusion is erroneous.

Assumption of risk "is a distinctive kind of contributory negligence." *Berge v. Harris,* 170 N.W.2d 621, 627 (Iowa 1969). Moreover, assumption of risk is explicitly among those kinds of conduct defined as "fault" in section 668.1(1). It can not be

disputed that a plaintiff's assumption of risk prevents a full recovery of damages. *Id.* This court's construction of section 123.92 complies with the proviso articulated in the comment to the uniform section. Thus, this comment presents strong evidence that dram shop liability was intended to be within the coverage of the act.

C. *General statutory language indicating intent.* Section 668.1(1) does not explicitly provide that dram shop actions under section 123.92 are to be included as fault. The majority finds support for its position in this observation.

Section 668.1(1) is not a serial listing of the actions subject to chapter 668 operation. The statute only generally states the categories of actions that come under its coverage. Had the general assembly listed several particular claims by name, we necessarily could have inferred that the list was exclusive. *See State v. Hatter,* 414 N.W.2d 333, 337 (Iowa 1987). Because section 668.1(1) is only generally descriptive rather than definitive, however, this court can not rely, as the majority does, on what the statute does not mention in deciding the merits of the current dispute.

What did the legislature intend in enacting chapter 668? It is obvious that the paramount intention was to create a comprehensive framework for the assessment and apportionment of liability and damages in actions involving unintentional torts. The majority fails to recognize and honor this intention.

V. *Conclusion.* Based on the above authorities and reasons, I would conclude that "strict tort liability" as defined under section 668.1(1) of the comparative fault act includes liability under our dram shop act, Iowa Code section 123.92. The heritage of dram shop liability is that of tort and enforcement of the statute follows tort liability principles. Further, I believe including dram shop liability in the concept of "strict tort liability" as contemplated in section 668.1(1) best serves the goals and purposes of both acts.

Finding liability under section 123.92 to be strict tort liability for purposes of section 668.1(1) of the comparative fault act, I would reverse the ruling of the district court which granted plaintiffs' motion and struck defendant's affirmative defense.

HARRIS and NEUMAN, JJ., join this dissent.