Carl E. **TRATCHEL**, Individually; and **Dorothy Tratchel**, as the Guardian of **Carl E. Tratchel** and the Conservator of his Property; **Judy Tratchel**; **Dorothy Tratchel**, Individually; and **Leland T. Tratchel**, Appellees,

v.

**ESSEX GROUP, INC.**, Appellant.

No. 88–1393.

Supreme Court of Iowa.

Feb. 21, 1990.

As Corrected March 7, 1990.

Ludwig B. Gartner, Jr. and Scott P. Drawe of Faegre & Benson, Minneapolis, Minn., Jack D. Hilmes of Duncan, Jones, Riley & Finley, Des Moines, for appellant.

Thomas D. Hanson, Barry A. Russell, and Lu Ann White of Hanson, Bjork & Russell, Des Moines, and Donald L. Schild of the Schild Law Office, Grinnell, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and ANDREASEN, JJ.

SCHULTZ, Justice.

This is an appeal from a judgment entered against Essex Group, Inc. (Essex), a manufacturer of a gas control unit. Carl Tratchel and his mother Dorothy Tratchel were severely injured as a result of a liquid petroleum (LP) gas explosion.

Carl and his wife Judy Tratchel purchased a Lennox gas furnace for their house in March 1982. The furnace was equipped with a gas control unit, the SX242, manufactured by Essex. The Tratchels subsequently moved, apparently turning off the gas furnace, water heater and stove. On October 13, 1983, Carl and his mother went to the house to do some repairs in preparation for sale. As it was unseasonably cold, Carl lit a match to start the furnace so the house would be heated while they worked. An explosion occurred. Both Tratchels were severely burned and remained in the University of Iowa Burn Center for over a month. Carl was subsequently injured in another accident and declared incompetent; Dorothy was appointed his conservator.

This action for personal injuries and property damages was commenced by Dorothy, individually and on Carl's behalf as his conservator. Carl also sought damages for loss of consortium on behalf of his children, Brett and Todd, Junior. Carl's wife Judy and Dorothy's husband Leland also asked for loss-of-consortium damages. In addition to Essex, the Tratchels named

the following as additional defendants: Lennox Industries, Inc., the furnace manufacturer; Brookwood Inc., the retailer and installer of the LP gas furnace; Master Tank & Welding, Inc., the tank manufacturer; Milligan Brothers Propane Co., the gas tank installer and LP supplier; Fisher Controls International, Inc., the manufacturer of the regulators; Pennwalt Corp., the manufacturer of LP gas odorant; and Hydrocarbon Transportation, Inc., the gas supplier. During the litigation, plaintiffs settled their claims with all defendants except Essex.

At the close of the evidence, the trial court submitted special verdicts and interrogatories which incorporated plaintiffs' three theories of liability against Essex. Plaintiffs alleged Essex manufactured a defective gas control unit and sought recovery based on: (1) strict liability; (2) negligence; and (3) fraud due to the withholding of facts about known product defects which misled defendant's customers and ultimately the consumers. On the strict liability and negligence counts, the court submitted a special verdict allocating fault to Essex, Carl and the settling defendants. The jury returned verdicts in favor of the plaintiffs on all three theories of liability, allocating fifty percent of the fault to Essex, one percent to Carl and the remaining forty-nine percent to the settling defendants except Fisher Controls, which was found faultless.

The jury also returned special verdicts determining plaintiffs' actual and punitive damages. It found that Carl's sons, Todd and Brett, were not entitled to damages. Following a review of the posttrial motions, the trial court entered judgment in accordance with the jury's full assessment of both compensatory and punitive damages. The court, however, reduced the amount of compensatory damages awarded by the full amount received by plaintiffs in their pretrial settlements. Additionally, the court sustained Essex's motion to rescind a previous order involving the preservation of evidence and ordered that the documents Essex produced be returned to it.

On appeal defendant asserts error in (1) the failure to prove causation, (2) the submission of punitive damages, (3) permitting an improper argument, (4) the instruction on the burden of proof, and (5) the failure to apportion damages for fraud under the comparative fault statutes. On cross-appeal, plaintiffs maintain the trial court erred in allowing the pro tanto setoff and by enforcing a nondisclosure stipulation requiring them to return all copies of Essex's documents. As the trial court entered judgment on the basis of the special verdicts under the fraud claims, we shall discuss these issues under this theory of recovery.

I. *Appellate procedure.* We first address the subject of appellate procedure, which does not concern the merits of the appeal, but affects our decision-making process nonetheless. This case took several weeks to try and produced a substantial transcript along with a thirty-seven volume district court file. On appeal the parties prepared an appendix containing 4,522 pages. We believe that a substantial part of this appendix contains superfluous material. At the very least, the appendix includes much material not cited in the briefs. We have previously commented on this problem and need not elaborate here. *See State v. Oppelt,* 329 N.W.2d 17, 21 (Iowa 1983); *Wilson–Sinclair Co. v. Griggs,* 211 N.W.2d 133, 137 (Iowa 1973).

Additionally, defendant in both its statement of facts and in the body of its brief often did not cite to the appendix or to the transcript. The use of summarized evidence without citation to the appendix violates Iowa Rule of Appellate Procedure 14(a)(5), (g). *Miller v. International Harvester Co.,* 246 N.W.2d 298, 306 (Iowa 1976). Courts should not be required to search the record to verify the facts and actions taken and are warranted in ignoring uncited contentions, especially in cases where the record is voluminous. *See Mosher v. Snyder,* 224 Iowa 896, 900, 276 N.W. 582, 583–84 (1937). The failure to edit and cite to the appendix needlessly increased our burden.

■ II. *Causation.* Defendant's first claim is based on plaintiffs' alleged failure to prove causation. Although the defendant's brief did not specify the source of the court's error, we assume it maintains the court erred by denying its motion for a new trial under Iowa Rule of Civil Procedure 244(f). This subsection allows the grant of a new trial if the verdict is not sustained by sufficient evidence. Plaintiffs respond by claiming that there is overwhelming proof that a defective gas control unit caused the explosion.

Plaintiffs' claim is based upon the allegation that defendant manufactured the defective gas control unit which was placed in plaintiffs' furnace. Defendant's product contained two internal valves, a manual valve and a safety valve. The purpose of these valves was to allow gas to flow through their chambers at the appropriate time, providing fuel for the furnace when it was operating, but closing and preventing gas from flowing when the furnace was not needed to produce heat or when the pilot light was off. Both valves had to be in an open position for gas to flow through them into the furnace.

Plaintiffs' expert concluded that gas had passed through both valves when the pilot was unlit, allowing gas to accumulate in the furnace area, exploding when the match was lit. Plaintiffs' expert theorized that defects caused both valves to be open, allowing gas to accumulate. He concluded that a stem on the manual valve had broken, resulting in a reading that the valve was closed when it actually was open. When the thermostat called for gas on a cold day it passed through the open valve. He also concluded that the internal safety valve failed because the safety reset lever had stuck.

In ruling upon motions for a new trial, the trial court has broad but not unlimited discretion. Iowa R.App.P. 14(f)(3). We will interfere only when the evidence clearly shows the trial court abused its discretion. *Schall v. Lorenzen,* 166 N.W.2d 795, 798 (Iowa 1969).

■ Defendant first asserts that the verdict must be reversed, because plaintiffs' theory of causation is based entirely on inadmissible expert testimony which was contradicted and wholly unsupported by the evidence. Defendant failed to specify the opinions it considered inadmissible nor did it cite to the appendix or transcript. Due to these failures, we conclude defendant waived consideration of this claim. We add, however, that our own review of the expert testimony indicates that defendant did not preserve error by failing to object to the opinion testimony at trial.

Defendant next urges that the expert witness' opinions were based on unsupported conclusions and on the assumption of facts lacking evidentiary support. Again, we have not been provided citations to the appendix and record, nor does our own search reveal timely and proper objections to opinions rendered. We decline defendant's contention.

Finally, defendant points to that portion of the expert's testimony where he opines that the gas control unit experienced dual simultaneous failures. It cites the case of *Siegel v. Mazda Motor Corp.,* 835 F.2d 1475 (D.C.Cir.1987), as standing for the proposition that where plaintiffs' evidence is entirely circumstantial and there is no evidence of any prior or contemporaneous machine failure, the case can not go to the jury solely on experts' opinions of a product's defect. We believe this interpretation is an overly restrictive reading of *Siegel.* Additionally, we do not believe that the *Siegel* analysis would apply to the type of accident in this case. An automobile accident is totally unlike a gas explosion. Common experience tells us that most automobile accidents result from driver error. The accumulation of gas leading to an explosion normally results from a mechanical failure.

Nevertheless, we need not decide whether we follow defendant's interpretation of the *Siegel* rule. Plaintiffs' theory of causation relies on much more than the expert's opinion that the explosion was caused by defects in defendant's gas control unit. Plaintiffs presented the findings and conclusions of experts who investigated the fire scene. They offered extensive docu-

mentation of the problems defendant was experiencing with this unit. Plaintiffs also presented considerable evidence negating other possible causes of LP leaks. All of this evidence, without the expert's challenged explanation and concluding opinion, points to a defect in defendant's product as being more probable than any other explanation of the cause of plaintiffs' harm.

The trial court correctly submitted the issue of causation to the jury. We find no abuse of discretion in the denial of a motion for a new trial.

■ III. *Punitive Damages.* Defendant urges that the claims for punitive damages should have been dismissed. It asserts that there was no evidence that defendant acted wantonly or recklessly. Defendant does not specify the erroneous ruling except to say that punitive damages should not have been submitted to the jury.[1] Defendant did move for a directed verdict on plaintiffs' claims for punitive damages at the close of plaintiffs' case and renewed this motion at the close of all the evidence. Defendant failed to object to the instruction on punitive damages. Consequently, we only consider the motions for directed verdict.

■ When considering the propriety of a motion for directed verdict, the court views the evidence in the light most favorable to the opposing party. Iowa R.App.P. 14(f)(2). The trial court has a duty to submit any issue supported by substantial evidence. *Valadez v. City of Des Moines*, 324 N.W.2d 475, 477–78 (Iowa 1982).

■ Under appropriate circumstances, a plaintiff may be entitled to both actual and punitive damages in a fraud case. *Sinnard v. Roach*, 414 N.W.2d 100, 108 (Iowa 1987); *Freeman v. Bonnes Trucking, Inc.*, 337 N.W.2d 871, 879–80 (Iowa 1983). Punitive damages are recoverable when a defendant acts maliciously. *Freeman*, 337 N.W.2d at 879. The malice may be actual, as when the defendant acts out of personal spite, hatred or ill-will, or it

may be established by a showing of wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights. *Id.* at 879–80.

Plaintiffs' cause of action for fraud is based on allegations of misrepresentation. They claim that defendant omitted facts regarding the defects and misled its customers and public consumers by falsely stating that a dangerous malfunction might only occur under certain circumstances not present in this case. The jury found that plaintiffs had established that defendant's misrepresentations resulted in the use of a defective product which caused the accident.

The court instructed the jury on plaintiffs' claims for punitive damages based on defendant's willful and malicious disregard of plaintiffs' rights as shown by its failure to warn the ultimate consumer of known defects and to recall and replace certain defective units. As we have indicated, the contents of the instruction on punitive damages were not challenged. What is in dispute is whether there is sufficient evidence to justify the submission of punitive damages.

Defendant claims that there is no evidence of either actual or legal malice. It maintains that the evidence indicated that defendant fully tested every gas control unit that left the factory, that they complied with industry standards, and that there was evidence of only one prior injury involving its product.

We find the evidence sufficient to show that defendant acted with legal malice. Defendant was aware of defects allowing gas leakage. Original equipment that was found defective was returned to the factory and disassembled by defendant. Inspection reports noted that stems on manual valves were binding and internally broken. Defendant had knowledge that tools were used by customers to turn the binding knobs resulting in broken stems. Defendant also knew that the leaks from the safety valves were exacerbated by design

---

1. In footnotes to the brief addressing punitive damages, defendant raised questions concerning the constitutionality of punitive damage awards and the matter of remittitur. As defendant did not raise either of these matters as an issue on appeal, we do not address them.

changes made in the reset lever. A repairman who testified at trial suffered burns when gas leaked through a similar valve.

There is evidence that while internally conceding some of these defects, defendant intentionally kept the magnitude of these problems from the appropriate government agency and its customers. Defendant tried to shift responsibility for the leaks to improper installation or lighting procedures. However, during the same period, it had already duplicated leaks in units using proper installation and lighting procedures. Defendant also found that some of the intermittent leaking could be stopped by tapping the valve on the side with a hammer. In 1983, defendant inspected some 700 units returned with leaks in the safety valves. Some leaks were attributed to field contamination and high pressure but many were found to be the result of in-house contamination and "out-of-spec" cavity dimensions. Although defendant made changes in its product's design, it did not disclose the defects found in the units that were manufactured earlier. Defendant did warn that a small percentage of the units might not operate properly, but indicated that this was due to inadvertent and improper lighting. While defendant presented evidence to the contrary, we believe that this conflict goes to the credibility and weight of the evidence.

It is true that plaintiffs only showed one prior personal injury involving defendant's gas control unit. The evidence did show, however, that defendant was aware that injury would result when a leakage occurred. Before the explosion in the Tratchel home, defendant had a record of other incidents and hundreds of leakage reports. Any probability that an incident would be unlikely is clearly outweighed by the known severe consequences of a gas explosion.

In summary, we conclude that there was substantial evidence of legal malice on the part of the defendant. The trial court did not err by submitting the matter of punitive damages for jury consideration.

■ IV. *Closing argument.* Defendant claims that plaintiffs' counsel's closing argument invited the award of punitive damages on an improper and prejudicial basis. It refers to that portion of the argument where plaintiffs' counsel recounted defendant's lack of concern for the safety of others. Plaintiffs' counsel made the following statement:

> While time goes on, pressure builds, what is the next thing this responsible company does? Sell the plant. Get rid of the hourly employees. Sell the plant.

The attorney then related how the company stood by until plaintiffs were injured. He continued by stating:

> What is the next thing they do, they hire the lawyers. They're lucky in that circumstance. The valve burned up. I don't have it here. I can't experiment on it. There was supposed to be 700 of them out there and I couldn't get one of them.
>
> The game will continue. You will hear about how it was Carl's fault. They went through three and half years of this. There is only one thing, only one thing this kind of company understands. They need to be punished. They deserve it. There are a million of those valves out there. They don't even try to defend it for you.

Defendant moved for a mistrial, challenging the conclusion that it had sold the plant and laid off all of the workers because of problems that it was having with its product. It claims that this was not a permissible inference from the evidence, but rather a flagrant attempt to inflame the jury. Defendant also challenges the argument that it hired lawyers to defend this case.

The trial court overruled defendant's motion, stating that plaintiffs' argument regarding the plant closing was a fair comment on the evidence. The court stated that the comment about hiring lawyers did not warrant a mistrial, but sustained defendant's objection directing counsel not to proceed any further in that vein.

There is evidence in the record that defendant had closed its plant because of the capital investment necessary to remain competitive. We need not decide whether plaintiffs' argument was a proper inference

from the evidence. Ordinarily, rulings on objections to arguments of counsel are discretionary. *Rasmussen v. Thilges*, 174 N.W.2d 384, 391 (Iowa 1970). "Before a new trial will be granted for misconduct in argument it must appear prejudice resulted or a different result could have been probable but for such misconduct." *Id.* (Citations omitted). When we consider both arguments and look at the entire record we conclude neither occurred. We do not believe the trial court abused its discretion.

V. *Inadmissible evidence.* Defendant urges that the verdict in this case is "shocking" in light of the lack of evidence to support the awards. It attributes this result, in part, to plaintiffs' final argument, which we have addressed, and the remainder to the trial court's incorrect evidentiary rulings.

A. *Irrelevant evidence.* Defendant criticizes the trial court for not taking control of the case and for admitting an "avalanche" of irrelevant evidence about its product. It refers to a motion in limine to exclude evidence of causally unrelated conditions which the trial court granted and subsequently reversed during the course of the trial. It maintains that evidence of unrelated conditions is not relevant to plaintiffs' theory of the case. Plaintiffs urge that the evidence of other defects and occurrences are relevant to the issues in the fraud claim.

We are again faced with a procedural problem. It is not clear whether defendant is claiming the trial court erred in reversing its earlier ruling on the motion in limine or whether it is referring to a specific relevancy objection. In either case, the defendant does not cite to that portion of the appendix or transcript containing these alleged rulings or objections. Although we could summarily dismiss this issue on the basis that these citations were not provided, we also find no merit in their contention.

■ If defendant is referring to the trial court's final ruling on the motion in limine, it has no valid claim. The denial of a motion in limine cannot constitute reversible error. *See Yeager v. Durflinger*, 280 N.W.2d 1, 5 (Iowa 1979). To preserve error after a motion in limine has been denied, it is necessary to make a proper objection at the time the evidence is offered. *Id; Twyford v. Weber*, 220 N.W.2d 919, 924 (Iowa 1974).

■ When we turn to the evidence presented at trial, we note that the defendant does not refer to any objections made when the evidence was tendered. The court has examined several, but not all, of the portions of the alleged irrelevant testimony. The court fails to find timely objections. Defendant has, therefore, failed to preserve error on this issue.

B. *Relevancy of agency investigation.* The court had sustained defendant's motion in limine preventing reference to a Consumer Product Safety Commission (agency) investigation. In the motion defendant claimed that all of the evidence relating to the investigation was irrelevant, raised collateral issues, and created the potential for unfair prejudice. After plaintiffs discussed the investigation, the court reconsidered and reversed its ruling. It considered all the problems that it would have during trial in preventing any reference to the agency investigation from being made and concluded that any prejudice caused by its admission was not sufficient to warrant the court deleting all references to it. The court did indicate that it would sustain objections to the admission of the agency's rules and regulations as irrelevant. Without addressing preservation-of-error issues, we find no merit in defendant's claim.

■ The determination of the relevancy of evidence rests within the sound discretion of the trial court, and it will be reversed only upon a showing that such discretion has been abused. *State v. Gordon*, 354 N.W.2d 783, 784 (Iowa 1984). In exercising this discretion, it was proper for the trial court to consider the time demands and the possibility of confusing the issues. *See Carter v. MacMillan Oil Co., Inc.*, 355 N.W.2d 52, 55 (Iowa 1984).

■ The trial court was faced with numerous documents which referred to the agency investigation. The court noted the

quagmire of editing that would have been required by its previous ruling. We find no error in allowing a reference to the agency inquiry under these circumstances where no government reports were admitted, and the jury was aware that the product was not recalled. It would have been unrealistic and potentially confusing to do the mass editing requested by the defendant.

Furthermore, the mere reference to a government inquiry can scarcely be prejudicial in the context of this lengthy trial. Any misunderstanding by the jury could have easily been remedied by instructions. Defendant has not claimed that the court failed to instruct the jury on this evidence. We find no abuse of discretion.

C. *Admissibility of settlement.* Defendant urges that the trial court erred in admitting evidence of its 1981 settlement with Lennox, resolving claims of allegedly defective control knobs on the gas control unit. It urges that Iowa Rule of Evidence 408 excludes evidence of compromise or offers to compromise. Plaintiffs maintain that any agreement between defendant and Lennox was not a settlement within the ambit of rule 408.

 Rule 408 excludes evidence of compromise or offers to compromise if the evidence being introduced is used to prove liability for or invalidity of the claim. *Gail v. Clark,* 410 N.W.2d 662, 671 (Iowa 1987). Such evidence may be admissible, however, when offered to prove a fact other than liability. *Id.* It is also admissible if the intent of the settling party is to admit responsibility rather than to offer a compromise. *Nehring v. Smith,* 243 Iowa 225, 233, 49 N.W.2d 831, 835 (Iowa 1951).

We need not decide whether the trial court abused its discretion in determining that the evidence was admissible. We conclude in part, that the defendant failed to preserve error and was not prejudiced by the rulings of the court.

We now turn to the issue as presented. In its brief defendant refers generally to evidence of a settlement without reference to any particular ruling and without including citations to the appendix or transcript showing the source of the complaint. Our examination indicates that a Lennox employee testified about the problems Lennox had had with the valve knob. The employee was allowed to testify without objection that the problem had been resolved by defendant paying Lennox $100,000. Plaintiffs then offered into evidence exhibit 51, a letter from defendant to Lennox setting out a payment schedule, an extension of the warranty and a statement that this was a complete and full settlement for the cost Lennox had incurred because of these pilot-knob problems. Plaintiffs also offered into evidence exhibit 52, an interoffice memorandum which indicated that 16,081 of the 111,138 valves received from defendant were defective. It also set out the steps defendant had taken to improve the product and refers to the settlement arrangement.

Defendant did object to the admission of these two exhibits in a previous colloquy with the court. It stated that its settlement with Lennox had nothing to do with the case, was not relevant or material, and that its prejudicial value outweighed any probative value that the documents could have on the issue of notice. Plaintiffs, on the other hand, urged that the exhibits were admissible to show that defendant knew of this particular problem with this particular valve.

 In addition to the acknowledgement of settlement, exhibit 52 contained other factual matters that were admissible to show defendant's longtime knowledge of its product's defects. We believe this information was relevant to plaintiffs' fraud claim. When an exhibit contains an offer of compromise but also contains other material evidence, an objection made to the whole of the exhibit is too broad, and it is not error to admit it. *Suntken v. Suntken,* 223 Iowa 347, 359–60, 272 N.W. 132, 138 (1937); *Boylan v. McMillan,* 137 Iowa 142, 144, 114 N.W. 630, 631 (1908).

 We need not decide whether exhibit 51 was an admission of liability or an offer to compromise. Defendant cannot be prejudiced by its admission into evidence,

because the witness had already testified to the $100,000 settlement without objection. The same settlement terms were outlined in exhibit 52. Consequently, this exhibit was primarily cumulative. The admission of evidence is not prejudicial when substantially the same evidence was admitted without objection. *Linge v. Iowa State Highway Comm'n,* 260 Iowa 1226, 1236, 150 N.W.2d 642, 648 (1967). Furthermore, reversible error on an evidence ruling is not committed unless a substantial right of a party is affected. Iowa R.Evid. 103(a). We find no reversible error in the admission of these exhibits.

■ VI. *Instruction.* Defendant complains that the trial court refused to give a requested instruction defining "the burden of proving fraud by a preponderance of clear, satisfactory, and convincing evidence." We found reference to defendant's proposed instruction 28A in its brief and in the portion of the appendix covering the objections to the instructions. Defendant did not cite that portion of the record containing this proposed instruction, nor were we able to find it in the appendix or in the district court files submitted to us. We must accept the record as made by the parties and cannot consider matters which are not a part of the record. *Allen v. Highway Equip. Co.,* 239 N.W.2d 135, 143 (Iowa 1976).

■ The court's instruction, setting out the essentials for recovery on a fraud case, adopted much of the language of the current version of Iowa Uniform Jury Instruction 810.1. The instruction provided that plaintiffs must prove certain elements "by a preponderance of clear, satisfactory and convincing evidence." The court did not define the terms "clear, convincing and satisfactory evidence."[2] Defendant's counsel objected to the instruction on the grounds that it was misleading and volunteered to draft language that would be appropriate. When this proposed instruction was submitted to the court, the court rejected it. While the court referred to parts of the

proposed instruction, we do not have a sufficient record before us to determine whether or not the instruction was proper. We simply cannot decide a matter not included in the record presented to us.

VII. *Damages.* Each party maintains that the trial court erred in its judgment on damages. Defendant urges that damages for fraud should have been determined on a pro rata basis under fault principles. Plaintiffs disagree and further claim that the trial court erred in its pro tanto setoff of damages. We address these claims in turn.

■ A. *Fraud—comparative fault.* Defendant maintains the trial court erred in denying its motion to instruct the jury that fraud was an element of fault. Defendant claims that the Comparative Fault Act, Iowa Code chapter 668, applies to fraud actions.

The tort of fraud is not mentioned in chapter 668. Iowa Code section 668.1 defines fault as conduct that is negligent or reckless or subjects a person to strict tort liability or breach of warranty; it is also applicable to acts which constitute a defense to the prohibited conduct.

We have held that comparative fault under chapter 668 does not apply as a defense to a dramshop action. *Slager v. HWA Corp.,* 435 N.W.2d 349, 352–53 (Iowa 1989). We noted that neither contributory nor comparative negligence was a defense to a dramshop action prior to the adoption of chapter 668 and that had the legislature intended for the chapter to cover such actions, it could have easily done so. *Id.* at 353.

We believe that the reasoning in *Slager* is equally applicable here. Prior to the adoption of chapter 668, our case law held that negligence is not a defense to fraud or to an intentional tort. *Lockard v. Carson,* 287 N.W.2d 871, 878 (Iowa 1980); *see also Sedco Int'l, S.A. v. Cory,* 522 F.Supp. 254, 329 (S.D.Iowa 1981), *aff'd,* 683 F.2d 1201 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103

---

**2.** After this case was tried, the committee on uniform instructions adopted Iowa Uniform Instruction 100.19 which states: "Evidence is clear, convincing and satisfactory if there is no serious or substantial uncertainty about the conclusion to be drawn from it."

S.Ct. 379, 74 L.Ed.2d 512 (1982). Had the legislature intended chapter 668 to cover fraud actions, it could have easily included fraud in section 668.1. *See Slager,* 435 N.W.2d at 353. We believe that it would be improper for this court under the guise of interpretation to expand the clear definition in the statute.

Defendant invites us to follow the ruling of the Minnesota court in *Florenzano v. Olson,* 387 N.W.2d 168 (Minn.1986). In that case the court concluded that their comparative fault statutes would apply to actions for negligent misrepresentation. *Id.* at 176. We decline the invitation as there are differences in the statutes and in the previous interpretations of both courts. Furthermore, our case presents other issues in addition to negligent misrepresentation. Here, the trial court instructed the jury that elements of fraud included knowledge that the representation was false and an intent to deceive. These instructions require conduct that is different from negligent misrepresentation. The trial court correctly rejected the application of comparative fault to the fraud claim.

■ B. *Setoff.* The trial court reduced plaintiffs' judgment by the amount received from the other settling defendants. Plaintiffs maintain that they are entitled to full damages without reduction. We disagree.

■ In previous cases we have held that the pro tanto rule remains viable in cases not affected by the enactment of chapter 668. *Duggan v. Hallmark Pool Mfg. Co., Inc.,* 398 N.W.2d 175, 179 (Iowa 1986); *Glidden v. German,* 360 N.W.2d 716, 722 (Iowa 1984). We have also held that a tortfeasor, liable for fraudulent misrepresentation, is entitled to a setoff even though he does not have a right of contribution. *Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 167 (Iowa 1984). Furthermore, setoff is allowed despite a jury finding that a settling defendant was not liable to plaintiffs. *Duggan,* 398 N.W.2d at 179. The trial court correctly allowed a complete setoff of the settlement amounts.

■ VIII. *Enforcement of a nondisclosure stipulation.* During the discovery process, plaintiffs and defendant entered into a "Stipulation of Nondisclosure" which protected defendant from the dissemination of documents containing matters it considered trade secrets and confidential information. At the conclusion of the trial, the court entered an order requiring compliance with this stipulation. Plaintiffs now seek to avoid this enforcement order, maintaining there is no reason to protect trade secrets as defendant no longer manufactures the product.

Iowa Rule of Civil Procedure 123 grants the trial court wide discretion to issue protective orders. *Farnum v. G.D. Searle & Co.,* 339 N.W.2d 384, 389 (Iowa 1983). Parties are encouraged to informally work out discovery disputes when possible. *Id.* at 391.

We do not believe the trial court abused its discretion. The court simply carried out the agreement of the parties. Plaintiffs have not demonstrated extraordinary circumstances, a compelling need to prevent the enforcement of their agreement nor shown that the trial court abused its discretion. *See Martindell v. International Tel. & Tel. Corp,* 594 F.2d 291, 296 (2d Cir. 1979).

IX. *Summary.* We have considered all of the claims made by each party. We hold that the judgment entered by the trial court should be affirmed.

AFFIRMED.