WIGGINS, Justice
(dissenting).
I dissent. The majority attempts to reach what it deems a fair result in deciding the case by misconstruing chapter 668 of the Iowa Code. The majority then uses a fallback position that was not tried below or raised on appeal to affirm the judgment. At its best, the majority decision is wrong; at its worst, it usurps the power of the legislature by redefining the legislative policy of chapter 668.
It is well-settled law that our court will not review a case on a theory different from that on which the parties tried the case in the district court. Dormoy v. Knower, 55 Iowa 722, 724, 8 N.W. 670, 671 *124 (1881). The parties tried this ease as a comparative fault case governed by Iowa Code chapter 668. Furthermore, the defendants only requested an instruction asking the jury to find the estate at fault because “Elizabeth Von Linden was at fault for taking her own life.” Moreover, these are the only theories the parties argue on appeal. Thus, these are the only issues we can decide in this appeal.
Iowa adopted its comparative fault act, chapter 668, in 1984. 1984 Iowa Acts ch. 1293. The explanation to the bill states, “This bill would enact the Uniform Comparative Fault Act as promulgated by the conference of commissioners on uniform state laws.” H.F. 2487, Explanation, 70th G.A., Reg. Sess. (Iowa 1984). Explanations attached to bills are evidence of legislative intent. City of Cedar Rapids v. James Props., Inc., 701 N.W.2d 673, 677 (Iowa 2005). This explanation makes it clear the legislature intended to follow the Uniform Comparative Fault Act.
The Uniform Comparative Fault Act contains the same definitions of fault as appears in Iowa Code section 668.1. Uniform Comparative Fault Act § 1(b), 12 U.L.A. 125 (2008). The Uniform Comparative Fault Act states, “The Act does not include intentional torts.” Id. § 1, cmt. at 126. While some states have included intentional acts within the definition of fault, Iowa chose not to do so. Compare Ind. Code § 34-6-2-^45 (2008), with Iowa Code § 668.1 (2003). Therefore, the first question we need to answer is whether chapter 668 covers defendants’ specification of negligence.
The court submitted one specification of comparative fault stating, “Elizabeth Von Linden was at fault in the taking of her own life.” The estate argues under the facts of this case, suicide is not comparable to Mercy’s negligence under Iowa Code section 668.1. Chapter 668 of the Code controls Iowa’s comparative fault scheme. For purposes of chapter 668, the legislature defined fault as:
one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.
Iowa Code § 668.1(1).
The language we need to focus on is “one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others.” Id. The common meaning of suicide is “the act or an instance of taking one’s own life voluntarily and intentionally.” Webster’s Third New International Dictionary 2286 (unabr. ed.2002); see also Iowa Code § 707A.1 (defining suicide for the purpose of the assisted suicide statute as “the act or instance of taking a person’s own life voluntarily and intentionally”). By definition, suicide is an intentional act. The act of committing suicide is neither negligent nor reckless. Accordingly, suicide is not an act included in the definition of fault in chapter 668.
We have previously held, when an act of a party is not included in the definition of fault contained in the comparative fault statute, the comparative fault statute does not apply to the excluded conduct. See, e.g., Carson v. Webb, 486 N.W.2d 278, 280 (Iowa 1992); Tratchel v. Essex Group, Inc., 452 N.W.2d 171, 180-81 (Iowa 1990), abrogated on other grounds by Comes v. Microsoft Corp., 775 N.W.2d 302, 310 (Iowa 2009); Slager v. HWA Corp., 435 N.W.2d 349, 352-53 (Iowa 1989). In Car *125 son, we held an intentional act, such as assault and battery, is not included in the definition of fault; therefore, the collateral source rule contained in section 668.14 was not applicable to the plaintiffs claim. 486 N.W.2d at 280. In Tratchel, we decided fraud is not included in the definition of fault contained in section 668.1(1). 452 N.W.2d at 180-81. Accordingly, we did not allow the jury to compare the negligence of one party with the fraud of another. Id. In Slager, we refused to allow the finder of fact to compare a corporation’s dramshop liability with a patron’s negligence because dramshop liability is not fault as defined by the legislature in section 668.1(1). 435 N.W.2d at 352-54.
To be consistent with our prior case law, we should not apply the provisions of chapter 668 to acts not included in the definition of fault found in section 668.1(1). Because suicide is not an act included in the definition of fault, the defendants were not entitled to compare the intentional act of Von Linden committing suicide to its negligence. Thus, I would find the court erred in instructing the jury that it must assign a percentage of fault against Von Linden if it concluded Von Linden was at fault for taking her own life.
The majority also relies on the rule of statutory construction directing the court to avoid construing a statute in a manner leading to an absurd result. The majority’s reliance on this rule of construction is flawed in a number of ways. First, before we can rely on the rule, we must find the statute is ambiguous. Andover Volunteer Fire Dep’t v. Grinnell Mut. Reins. Co., 787 N.W.2d 75, 81 (Iowa 2010). If the statute is not ambiguous, we must apply it as written. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co., 606 N.W.2d 376, 379 (Iowa 2000). The majority finds no ambiguity in the statute, which on its face clearly does not apply to intentional acts.
The second flaw in the majority’s argument is the use of its example stating, “a plaintiff who carelessly, but accidentally, sets her home ablaze would have her recovery against negligent firefighters barred or reduced by her own comparative fault; yet a homeowner who intentionally sets her dwelling ablaze could recover in full.” Comparing the act of a person committing suicide to the act of a person intentionally setting a fire is illogical. The person who set the fire is not under the care of the fire department to prevent that person from setting the fire. In this case, the jury found that Von Linden was under the care of the physician to treat a mental illness that made her more susceptible to commit suicide, and the physician was negligent in treating her.
A plain reading of the statute does not allow the majority to conclude the jury can compare an intentional act to a negligent act when it determines fault. For this reason, I disagree with the majority’s analysis.
As a fallback position, the majority retries the case and finds that the jury could find Von Linden negligent for her failure to call the suicide hotline or the doctor’s office before she committed suicide. The problem with this position is that the parties did not try the case under this theory or raise this argument on appeal. I agree our statute allows the submission of comparative fault when there is evidence a suicide victim’s negligence or “fault” contributed to the person taking his or her own life. See, e.g., Shewn v. Lutheran Med. Ctr., 18 P.3d 796, 801 (Colo.App.2000) (allowing suicide victim to be found comparatively negligent when there was evidence he was not completely truthful or forthcoming in his statements to medical care providers and when he failed to keep *126 a follow-up mental health appointment). The flaw in the majority’s argument is that the parties never tried the issue involving Von Linden’s negligence in failing to call the suicide hotline or the doctor before committing suicide. In fact, the parties did not argue on appeal whether such conduct on the part of Von Linden constituted fault.
I agree there was evidence in the record regarding the existence of a suicide hotline and evidence that Von Linden’s doctor instructed her to call the doctor’s office if she had any problems. However, there was no evidence at trial that she failed to call the suicide hotline or the doctor’s office after her discharge from the hospital. Additionally, the defendant did not introduce any evidence that the failure to call the suicide hotline or the doctor’s office before she committed suicide was within the scope of the defendant’s liability. The failure of the defendant to introduce this evidence and ask for a specific instruction to find Von Linden was negligent for failing to call the suicide hotline or the doctor’s office makes it clear to me that this issue was not tried in the district court. In effect, the majority has stated that the mere fact that the evidence contained a reference to the suicide hotline or that she was told to call the doctor’s office if she had any problems was enough for the jury to find that she was at fault. I disagree.
For the defendants to succeed on appeal with this argument, they would first have had to ask for a jury instruction claiming this specification of fault. The only specification of fault requested by the defendant was “Elizabeth Von Linden was at fault in the taking of her own life.” This court should not decide this case on a theory that was not tried in the district court. Dormoy, 55 Iowa at 724, 8 N.W. at 671. The defendants offered no evidence tending to show that Von Linden’s actions in not making a call for help had anything to do with her suicide. In the recent opinion of Doe v. Central Iowa Health System, 766 N.W.2d 787 (Iowa 2009), we held expert testimony must be produced to engender a fact question on the issue of whether conduct caused emotional harm. Doe, 766 N.W.2d at 794.
By using Von Linden’s conduct on a theory of fault not presented to the jury to reach a fair result, the majority would allow the jury to speculate whether a failure to call, if such a failure in fact occurred, was a proximate cause of Von Linden’s suicide. Had Von Linden’s attorney known this might become a viable issue in this case, he could have objected to its submission to the jury for lack of eviden-tiary support. By using a theory that was not submitted to the jury as a justification of the outcome, the majority allows trial by ambush.
The bottom line is that, if a physician is negligent in the treatment of a patient, the physician is responsible for the damages within the scope of the physician’s liability. It is clear to me that the majority believes it would be absurd and unfair to allow the estate of one who commits suicide to recover damages from medical providers. But a judge’s personal opinion as to whether a person who commits suicide should or should not recover damages does not give the judge license to rewrite the comparative fault statute to achieve a desired result.
Our job as judges is not to write a decision to avoid an unfair result. Our job is to apply the law passed by the legislature. The legislature makes the policy of this state and decides what is fair or not fair. In the absence of ambiguity, our duty is to apply a statute as written so long as it is constitutional. The legislature made a policy decision not to include intentional acts in the definition of fault. I *127 cannot join in the majority’s recasting of the statute to achieve what it deems a fair result because to do so would usurp the power of the legislature.
Accordingly, I would reverse the judgment of the district court.
HECHT, J., joins this dissent.