# IN THE COURT OF APPEALS OF IOWA

No. 21-0705
Filed January 27, 2022

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**CHRISTOPHER RYAN JENKINS,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Guthrie County, Richard B. Clogg, Judge.

The defendant appeals a jury verdict finding him guilty of operating while intoxicated, first offense. **AFFIRMED.**

Richard Hollis, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

It wasn't me. That defense would avoid a conviction of operating while intoxicated (OWI) if a jury believed Christopher Jenkins was not operating the van in which he was found. But, in April 2021, after weighing the evidence, a jury found Christopher Jenkins guilty of OWI, first offense. Asserting the record lacks substantial evidence to support the jury's verdict and that the law enforcement officers should not have been allowed to offer "expert" testimony about the ignition system, Jenkins appeals.

**Facts and Proceedings.**

Twenty-eight minutes after midnight, a 911 call alerted the Guthrie County Sheriff's Office to a van in a ditch on a county road. A deputy spotted Jenkins in this off-road van, asleep at the wheel with his seatbelt fastened and the brake lights on. As seen in the admitted body camera footage,[1] after several unsuccessful tries to wake him, Jenkins answered Guthrie County Deputy Blake Michelsen's question about what he was doing by saying, "I'm just driving." When asked where he was driving, Jenkins answered "in the grass." He again told the deputy he was just driving. Asked if anyone else had been in the vehicle, Jenkins said no.

As he processed the scene, Deputy Michelsen observed Jenkins to have slurred speech, sluggish appearance, and difficulty with balance, and the deputy smelled alcohol on Jenkins's breath. After asking Jenkins to exit the vehicle, Jenkins removed the seatbelt and complied. Deputy Michelsen could not find the key in the van, but observed a screwdriver on the floor of the vehicle. He observed

---

[1] The jury viewed the body camera footage and saw still-image photographs created from the video.

the ignition and noted it had been altered. During their conversation, Jenkins admitted he had been drinking, but said he believed he could drive safely. The deputy disagreed. After the deputy drove to a gas station area, Deputy Michelsen ran Jenkins through field sobriety tests, which Jenkins failed, and he took Jenkins into custody. Jenkins blew a .167 (over twice the legal limit) on the DataMaster breathalyzer test. At the sheriff's office, Jenkins offered more information, but at no time did he mention having a passenger or that there was another driver of the van that evening. Instead, several times he admitted he was the van's driver and even that he had permission to drive from the van's owner. Plus, he admitted to drinking two beers and three shots of whiskey and that he "went driving" to a gas station and then worked on the van headlight earlier in the evening before being located.

At the scene, Deputy Michelsen observed tire tracks showing the van had drifted off the roadway. That night, the temperatures were in the 40s, and there had been heavy rain. No skid marks or other erratic tire marks were observed. While there was damage to the vehicle, Deputy Michelsen knew from a week or so before that a headlight on the van was out because Jenkins or his common law wife, Connie Lynch, had struck a deer.

Trial was scheduled, and the State produced several witnesses for its case-in-chief. Deputy Michelsen summarized his observations and conversations with Jenkins. He emphasized that several times Jenkins admitted his operation of the van that evening. Both Deputy Michelsen and another State's witness, Deputy Todd Thorn, explained how a punched out ignition system operated and how Jenkins could have started the van without a key.

But another version of the incident emerged during trial. As the first defense witness, Lynch testified she drove the van that evening and that she typically drove when they went out. She described Jenkins as being drunk and claimed they had been at Doug Robb's home so the men could work on installing the damaged van's headlights. According to her, as she drove home, a deer ran into the path of the van and she avoided it by driving the vehicle into the ditch. Even though it was pouring rain and late at night, she left the van on foot with Jenkins inside and walked toward her stepfather's home because she was mad that Jenkins had gotten so drunk and because they were in an argument about her daughter. She thought he could "rot in the van drunk," and she left him in the passenger seat. She testified that she took the key even though the van needed it to start. As she walked home, someone, she believed a farmer, picked her up and took her home.

Doug Robb also testified for the defense. Robb confirmed Lynch's story that she was driving the van when she and Jenkins left the Robb property on the evening preceding the early-morning arrest. Because he had worked on the van, Robb was asked if it had a punched out ignition, and he answered "no." He said he used the van key to start it when he was repairing the headlights. But this contradicted his testimony at his deposition the day before the trial, when he was asked, "Did you ever see Mr. Jenkins's ignition of that Chrysler van?" and answered, "No."

Jenkins also testified, and his version matched both Lynch's and Robb's testimony. But on cross-examination, Jenkins admitted he told the officers he was driving that night and that he never told any of them another person was in the car. He also acknowledged his intoxication.

Finally, as a State's rebuttal witness, Chief Deputy Jeremy Bennett produced a photograph of a same model van steering column showing the ignition system and compared it to the photograph taken of the column during the arrest. Noting the differences, Chief Deputy Bennett described Jenkins's van as "missing a black plastic housing that goes around the chrome part of the ignition, and it's got a bigger hole in the center of that ignition versus a quarter inch key slot." Without objection, he confirmed he was "100 percent confident" that Jenkins's ignition had been altered. To dispute Chief Deputy Bennett's claims, Robb returned to the witness stand with two photographs of Jenkins's van's steering column and ignition system that he claimed he took just that day. He represented that the photographs showed the ignition was not punched out. A second photograph of the ignition showed a key inserted into the key hole. On cross-examination, Robb agreed he had a van at home of a similar make and model.

After the State presented its case-in-chief, and again at the end of his case, Jenkins moved for judgment of acquittal. The district court denied the motions. The jury deliberated and returned a verdict of guilty.[2] Jenkins timely appealed.

---

[2] The district court sentenced Jenkins to a term of two days in jail with credit for time served, suspended the remaining one-year jail sentence, and placed Jenkins on probation for one year. The court required Jenkins to pay a probation supervision fee of $300, a fine of $1250, and the statutory 15% surcharge, but waived $625 of the fine and the 15% surcharge if Jenkins presented to the Court a temporary restricted license within 90 days. The district court offered Jenkins the opportunity to "receive day-for-day jail credit if he completed the OWI First Offender Weekend program within sixty (60) days of the original sentencing date."

**Analysis.**

*Substantial Evidence.*

"The principles governing our review of a district court's denial of a criminal defendant's motion for judgment of acquittal are well-established." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). We review claims of insufficient evidence for correction of legal error and uphold the verdict if substantial evidence supports it. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). Evidence is substantial "if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019) (citation omitted). "[T]he evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013) (quoting *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002)).

Jenkins preserved error by moving for a judgment of acquittal identifying the specific grounds raised on appeal. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996). Namely, in his motions, Jenkins focused on the failure to prove his operation of the van. He pointed to the inability of the officers to find a key necessary to operate the van.

The heartbeat of Jenkins's appeal is the sufficiency-of-the-evidence question. He urges that the evidence was insufficient to sustain a conviction of OWI. Put simply, if the State cannot prove he was operating the van, Jenkins must be acquitted. "Substantial evidence 'means a person may not be convicted based upon mere suspicion or conjecture.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (quoting *State v. Tipton,* 897 N.W.2d 653, 692 (Iowa 2017)). Jenkins argues

he had overwhelming proof because he testified he was not the driver of the van that evening and both Lynch and Robb supported that version with their sworn testimony at trial. He argues that the State, on the other hand, could offer no direct evidence of his operation, and the State's proof involved circumstantial evidence and admissions made by Jenkins on the day of his arrest, when he was very intoxicated.

The State had to prove: "(1) On or about the 18th day of March, 2020, the defendant operated a motor vehicle" and "(2) [a]t that time, the defendant had an alcohol concentration of .08 or more." Because the alcohol concentration was undisputed, the question came down to if Jenkins operated the motor vehicle. Jenkins argues that his witnesses knew who was driving the van while the State's case was all based on conjecture. But a jury can believe or disbelieve witnesses. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (noting a jury may reject a party's evidence and credit the evidence against it).

Here, the jury did not believe the version Jenkins presented. And if we examine the State's case, we find substantial evidence for a conviction of OWI. First, Jenkins made admissions about his drinking and driving when first confronted by police. For example, in response to the first question of Deputy Michelson about what was going on, Jenkins replied, "Just driving." Second, the deputy located Jenkins in the vehicle, sitting in the driver's seat with a seatbelt and the brake lights on. And third, no one else was in or around the vehicle, and Jenkins did not implicate an alternative driver. Additionally, during the intake process, Jenkins identified the owner of the van and said he had permission to operate the van that night. Because the version given by Jenkins at trial conflicted

with the versions given on the body camera and at the sheriff's office, a jury could find the later version less compelling. While Lynch testified she was driving and swerved to avoid a deer, no swerve marks were observed at the scene to confirm that story. And, although Jenkins emphasized that a key was not found in the vehicle, the law enforcement witnesses testified that because the ignition was "punched out," a screwdriver could be used to start the vehicle.[3] A screwdriver was indeed found in the van. Finally, after being arrested, when asked if Jenkins wanted Deputy Thorn to call his wife, Jenkins directed them to not call her. Even with this opening, Jenkins never mentioned his wife being in the van with him that night.

In response to the motion for acquittal at the end of the case, the district court noted:

> The Court finds that the arguments of counsel here are—do just go to what facts the jury believes. And if [it] believes the State, there is certainly sufficient evidence to—for them to find [Jenkins] guilty. And conversely, if they believe the Defendant's version, there is sufficient evidence—or a lack of evidence maybe to finding him not guilty.

We agree with the district court. So in the end, the jury processed the evidence and Jenkins's admissions and agreed with the State's version, so we have no basis to set the verdict aside. *See State v. Boleyn*, 547 N.W.2d 202, 205 (Iowa 1996) (holding that the operation of a motor vehicle may be established by circumstantial

---

[3] Deputy Michelsen did not search for the van keys but at trial he described punched ignition as:

> Whenever a key can be stuck in an ignition or it's locked, the vehicle can have its ignition punched out to where then you can operate the vehicle with anything that has a long shaft at the end—like a screwdriver or ice pick, something like that. I've seen people do it where they can put in nails and then use vice grips to start a vehicle.

evidence); *see also* Iowa R. App. P. 6.904(3)(p) ("Direct and circumstantial evidence are equally probative"). Substantial evidence supported the verdict.

*"Expert" Testimony.*

Jenkins also argues on appeal that the law enforcement witnesses were not qualified as experts to testify about the ignition system of the van. Jenkins asserts that the deputies' opinions were based on speculation and conjecture. We review the district court's admission of the objected to testimony for an abuse of discretion. *See State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014). "The district court abuses its discretion when it exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* But here, no one objected to the testimony. Even during jury selection, several potential jurors described the mechanism of a punched out ignition system without objection from Jenkins, suggesting lay persons understood how this alteration might function. Likewise, Jenkins did not object to the testimony of Deputy Michelsen when he was asked to explain how a punched ignition worked. Deputy Thorn pointed to his background of growing up on the farm and his first-hand experience with ignition systems that were punched out. And Chief Deputy Bennett described the punched out system using photographs. All law enforcement witnesses explained to the jury how Jenkins might start the van without any key in the vehicle. All testified without objections from Jenkins.

Because the record shows that Jenkins did not object to this testimony at trial, he failed to preserve this alleged error. *See Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 175 (Iowa 1990) (holding defendant did not preserve error by failing to object to the opinion testimony at trial).

**Conclusion.**

We find substantial evidence supports the conviction of Jenkins for OWI. We do not consider Jenkins's claim that police officers were allowed to give unqualified expert testimony, as Jenkins failed to object at trial.

**AFFIRMED.**